Richard S. HART, Plaintiff and Appellee,

v.

SALT LAKE COUNTY COMMISSION, Robert L. Tweedy, Robert E. Tweedy, John Does 1 through 10, Utah Department of Transportation, and State of Utah, Defendants and Appellants.

No. 960196–CA.

Court of Appeals of Utah.

Aug. 28, 1997.

Douglas R. Short and Patrick F. Holden, Salt Lake City, for Appellant.

Evan A. Schmutz and Lance N. Long, Provo, for Appellee.

Before DAVIS, WILKINS and BILLINGS, JJ.

WILKINS, Associate Presiding Judge:

Salt Lake County Commission (the County) appeals from the trial court's final judgment, which was entered following a jury trial in which the jury found the County negligent and liable for damages sustained by Richard S. Hart. The County also appeals the adverse post-trial orders entered by the trial court which, among other things, denied the County's motion to dismiss for lack of subject matter jurisdiction, denied the County's motion for relief from the judgment, granted Hart's motion to strike an affidavit, and denied the County's motion for a new trial.

Hart cross-appeals. Hart appeals the final order of judgment entered because it reduced the portion of the jury award for which the County was responsible to $250,-000, including interest and costs, pursuant to section 63–30–34 of the Utah Code.

We affirm in part and reverse and remand in part.

## BACKGROUND

In December 1986, Robert E. Tweedy, an unlicensed, drunk driver, collided with Hart in an automobile accident on Wasatch Boulevard. Robert L. Tweedy is the father of Robert E. Tweedy and the owner of the car involved in the collision.

In June 1987, Hart filed a complaint against the Tweedys. In January 1989, Hart was allowed to amend his complaint to add additional defendants, including the County. In his amended complaint, Hart argued the County was negligent in the following five ways: (1) failing to properly design, engineer, and construct Wasatch Boulevard near the area where the collision occurred; (2) failing to properly maintain the road; (3) failing to install adequate warning devices; (4) allowing the road to remain in its dangerous condition after the County knew or should have known of the dangerous condition; and/or (5) failing to properly maintain the intersection in a reasonably safe condition. Hart argued that the shoulder of the road where he was driving at the time of the accident was not wide enough, and that had the shoulder been wider, he would have been able to avoid the collision. In February 1989, the County filed its answer and raised governmental immunity as a defense.

In December 1991, the County moved for summary judgment against Hart on the grounds of governmental immunity and causation. During oral arguments on the County's motion, the County opted not to argue that it was protected from liability by governmental immunity. In March 1992, the trial court granted the County's motion for summary judgment on the ground that the accident was caused solely by Tweedy's intervening negligence. Hart appealed the trial court's decision. In June 1993, this court reversed and remanded for further proceedings.

Meanwhile, Hart and the Tweedys entered into a settlement agreement. Consequently, in March 1992, the trial court ordered a judgment against Robert E. Tweedy and dismissed Robert L. Tweedy from the case.

The trial of Hart's case against the County began at the end of August 1994 and lasted four days. At the end of the trial, the jury was given a special verdict form. The jury found the County to be fifty-one percent negligent and Robert E. Tweedy to be forty-nine percent negligent. The jury also found the damages, including special and general damages, to be $1,330,000.

In September 1994, the County filed a motion to limit the amount of judgment in accordance with section 63–30–34 of the Utah Code, which Hart opposed. The trial court granted the County's motion in December 1994, limiting the County's portion of the judgment to the sum of $250,000, including costs and prejudgment and postjudgment interest. The trial court then entered a judgment on the jury's verdict in January 1995, by which the court ordered the County to pay Hart $250,000 and ordered Robert E. Tweedy to pay Hart forty-nine percent of $1,330,000.

Several post-trial motions were filed following the trial court's order of judgment. First, the County filed a motion requesting judgment notwithstanding the verdict, a new trial, and remittitur. In its memorandum supporting this motion, the County argued, among other things, that the County was entitled to a new trial under Rule 59 of the Utah Rules of Civil Procedure because the trial court abused its discretion in two ways: (1) it did not specifically include Hart on the special verdict form as a party to whom the jury could apportion fault, and (2) it denied the County's motion for a mistrial after allowing Hart to comment on the amount of the settlement agreement between Hart and the Tweedys. Hart opposed this motion.

In March 1995, the County filed the affidavit of Michael E. Postma, the County's trial attorney in the case, in support of its Rule 59 motion for a new trial. The affidavit described the alleged circumstances surrounding (1) the trial court's decision to exclude Hart from the special verdict form and (2) the trial court's denial of the County's motion for mistrial after Hart referred to the settlement amount agreed to by Hart and the Tweedys.

Hart moved to strike Postma's affidavit in March 1995. Then, in May 1995, the County filed a Motion for Relief from Judgment or

Order/or Addendum to J.N.O.V. Among the arguments made in the memorandum supporting this motion, the County argued it was entitled to relief under Rule 60(b) of the Utah Rules of Civil Procedure because the Utah Supreme Court's decision *Keegan v. State*, issued in March 1995, represented an intervening change in appellate law regarding the issue of governmental immunity. Attached as an addendum to the memorandum supporting the motion was Tosh Kano's affidavit, in which Kano testified to the way in which the County decides whether to widen or not widen road shoulders. Hart again opposed this motion.

Following oral argument on the County's motions, in September 1995, the trial court entered its findings of fact, conclusions of law, and order regarding the County's motions requesting judgment notwithstanding the verdict, a new trial, and remittitur. Among its conclusions, the trial court concluded the following: (1) the County both abandoned and waived its governmental immunity argument and failed to introduce any evidence to support it; (2) *Keegan v. State* did not represent a change in law, so the County's Rule 60(b) motion should be denied; and (3) the County's Rule 59 motion was procedurally defective and should be denied on procedural grounds. The trial court therefore denied all the County's motions.

In September 1995, following entry of the trial court's findings, conclusions, and order, Hart filed a motion for reconsideration of the trial court's decision to limit the judgment against the County. That same month, the County filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction, arguing that the County was immune from suit and that immunity is a matter of subject matter jurisdiction. The next month, Hart moved to strike Kano's affidavit.

Finally, in a December 1995 minute entry, the trial court denied Hart's motion requesting that the trial court reconsider limiting the amount of the judgment against the County, denied the County's motion to dismiss for lack of subject matter jurisdiction, and granted Hart's motion to strike Kano's affidavit. Both the County and Hart appeal.

## ANALYSIS

The County makes three main arguments on appeal: (1) it did not owe a duty to Hart; (2) governmental immunity shielded it from liability; and (3) the trial court erroneously denied its motion for a new trial. Hart makes two main arguments on cross-appeal: (1) the trial court erred in capping the damages owed by the County to Hart under the damages cap statute because that statute is unconstitutional, and (2) the trial court erred by including interest and costs within the judgment reduced by the damages cap statute. We review each of these arguments in turn.

### A. The County's Duty to Hart

We first address the County's argument that it did not owe a duty to Hart.

■ To establish negligence, a plaintiff must first establish that the defendant owed the plaintiff a duty of care. *See Rollins v. Petersen*, 813 P.2d 1156, 1159 (Utah 1991) (" 'One essential element of a negligence action is a duty of reasonable care owed to the plaintiff by defendant.... Absent a showing of a duty, [the plaintiff] cannot recover.' " (alteration in original) (citation omitted)); *see also Lamarr v. Utah State Dep't of Transp.*, 828 P.2d 535, 537 (Utah Ct.App.1992) (listing all four elements of negligence). On appeal, the County argues that under the public duty doctrine, it did not owe a duty to Hart. Therefore, the County argues, because it did not owe Hart a duty, it cannot be liable for negligence.

However, Hart counters the County's argument by asserting that the County did not preserve this issue for appeal. Therefore, before we consider whether the County owed Hart a duty, we first address whether the County preserved this issue for appeal.

■ To preserve a substantive issue for appeal, a party must first raise the issue before the trial court. *See West One Bank, Utah v. Life Ins. Co.*, 887 P.2d 880, 882 n. 1 (Utah Ct.App.1994). " 'A matter is sufficiently raised if it is submitted to the trial court, and the court is afforded an opportunity to rule on the issue.' " *State v. Starnes*,

841 P.2d 712, 716 (Utah Ct.App.1992) (citation omitted). For a court to be "afforded an opportunity to rule on the issue," several requirements must be met. First, the issue must be raised in a timely fashion. This court has explained:

"To preserve a substantive issue for appeal, a party must timely bring the issue to the attention of the trial court, thus providing the court an opportunity to rule on the issue's merits. 'Issues not raised in the trial court in timely fashion are deemed waived, precluding [the appellate court] from considering their merits on appeal.'"

*Ohline Corp. v. Granite Mill,* 849 P.2d 602, 604 n. 1 (Utah Ct.App.1993) (citations omitted). Second, the issue must be specifically raised, *see State v. Whittle,* 780 P.2d 819, 820–21 (Utah 1989), such that the issue is sufficiently raised to a "level of consciousness" before the trial court, *James v. Preston,* 746 P.2d 799, 802 (Utah Ct.App.1987). Third, the party must introduce to the trial court "supporting evidence or relevant legal authority" to support its argument. *Tolman v. Winchester Hills Water Co.,* 912 P.2d 457, 461 (Utah Ct.App.1996) (citation omitted); *see also West One Bank,* 887 P.2d at 882 n. 1 ("'The mere mention of an issue in the pleadings ... is insufficient to raise an issue at trial and thus insufficient to preserve the issue for appeal.'" (quoting *LeBaron & Assocs., Inc. v. Rebel Enters., Inc.,* 823 P.2d 479, 482–83 (Utah Ct.App.1991))).

 The County argues it preserved this issue for appeal by objecting to jury instruction 23 at trial.[1] That instruction stated:

In this case the plaintiff claims the defendant was negligent in the following respects:

1. Defendant failed and neglected to properly design, engineer and construct Wasatch Boulevard at the site of the collision;

2. Defendant failed and neglected to properly maintain Wasatch Boulevard at the site of the collision;

3. Defendant failed and neglected to install adequate warning and protective devices or features, including but not limited to appropriate escape lanes;

4. Defendant allowed Wasatch Boulevard at the site of the collision to remain in a dangerous and hazardous condition after it knew or should have known of Wasatch Boulevard's dangerous and hazardous condition;

5. Defendant failed and neglected to properly maintain Wasatch Boulevard in a reasonably safe condition for use by the public, including plaintiff and other motorists.

To return a verdict for the plaintiff, you must find by a preponderance of the evidence that:

1. The defendant was negligent in one or more of the particulars alleged by the plaintiff; and

2. The defendant's negligence was a proximate cause of the plaintiff's injuries.

If you find in favor of the plaintiff on those two questions, you must then decide the amount of damages suffered by the plaintiff.

The County objected to this instruction in the trial court "on the grounds that there ha[d] been no evidence submitted that Salt Lake County designed, engineered or constructed Wasatch Boulevard." The County also specifically objected to subsection three of the instruction because "[t]here [was] no evidence as to Salt Lake County's negligence in failing to [in]stall adequat[e] warning and protective devices or features, including but not limited to appropriate escape lanes."

Thus, the County did not object to jury instruction 23 on the grounds that the County did not owe Hart a duty. Instead, it objected to the instruction on the basis of

---

1. The County also argues it preserved this issue for appeal by orally arguing the issue in a post-trial motion. However, "[r]aising an issue in a post-trial motion ... does not preserve that issue for appeal." *Estate of Covington v. Josephson,* 888 P.2d 675, 678 (Utah Ct.App.1994). In addition, the record reflects that the trial court never ruled on this issue after the County orally raised it in its post-trial motion, and that the County failed to fulfill its responsibility to call to the trial court's attention its failure to rule on the issue. Therefore, we address only the County's argument that it preserved the issue of duty by objecting to jury instruction 23 at trial.

insufficient evidence. Such an objection is not sufficiently specific to raise the County's argument that it did not owe Hart a duty because such an objection would not raise the issue " ' "to a level of consciousness such that the trial judge [could] consider it." ' " *State v. Brown*, 856 P.2d 358, 361 (Utah Ct.App. 1993) (citations omitted).[2] The record does not reveal any other attempt by the County to preserve this issue for appeal. Therefore, we conclude the County did not preserve this issue for appeal and decline to further address it.[3]

### B. Governmental Immunity

We next address the County's argument that it is shielded from liability in this case by governmental immunity.

Both parties acknowledge that the Utah Legislature has waived governmental immunity for injuries caused by the type of conditions that contributed to causing the accident Hart alleges existed on Wasatch Boulevard where the car accident occurred. *See* Utah Code Ann. § 63–30–8 (1993) (waiving governmental immunity for injuries caused by "a defective, unsafe, or dangerous condition of any highway, road, [or] street"). However, both parties also acknowledge that this waiver of governmental immunity is subject to certain statutory exceptions. The County argues on appeal that one of these statutory exceptions, the discretionary function exception, applies to this case and shields the County from liability with governmental immunity. *See* Utah Code Ann. § 63–30–10(1) (1993) (providing exception to waiver of governmental immunity for "the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused"). However, the trial court made several findings and concluded that the County waived and abandoned its governmental immunity argument at trial.[4]

2. Furthermore, the County did not object to other jury instructions dealing with the County's duty, and it made statements in a post-trial memorandum which at least indirectly contradict its argument on appeal that it did not owe Hart a duty. For example, jury instruction 30, which *the County* submitted to the trial court, states, "The duty owed by the defendant, Salt Lake County Commission, to the plaintiff is a duty to exercise due care in maintaining Wasatch Boulevard in a re[as]onably safe condition for travel." Moreover, in a post-trial motion, the County admitted to the trial court that "[i]n the present case, Salt Lake County had a duty to exercise due care in maintaining Wasatch Boulevard in a reasonably safe condition for travel."

3. The County argues that even if this court concludes it did not preserve this issue for appeal, this court should examine the issue of whether the County owed Hart a duty under the plain error exception. However, the County makes no effort to meet the requirements of the plain error exception by showing (1) an error exists, (2) the error should have been obvious to the trial court, and (3) the error is harmful. *See State v. Irwin*, 924 P.2d 5, 7 (Utah Ct.App.1996), *cert. denied*, 931 P.2d 146 (Utah 1997). Consequently, the County has not met its burden under the plain error exception, so we decline to further address this argument.

4. The trial court found:
 2. In its answer, Defendant raised the affirmative defense of governmental immunity.
 3. On December 12, 1991, Defendant filed a Motion [for] Summary Judgment on three specific grounds, including governmental immunity.
 4. On March 9, 1992, Defendant's Motion for Summary Judgment was argued to the Honorable James Sawaya, District Court Judge. During the course of oral argument of Defendant's motion, and in open court, Defendant, through its counsel of record, waived and abandoned the governmental immunity defense.
 5. In all further proceedings in this action, through the conclusion of trial and the jury verdict, Defendant did not attempt to raise the governmental immunity defense. The case proceeded to trial on the factual issues of negligence and causation.
 6. This case was tried to a jury for four days, commencing August 30, 1994 and concluding September 2, 1994.
 7. During the pretrial conferences and trial of the case, Defendant did not raise the issue of governmental immunity by way of motion, argument, proffered jury instruction, evidence or any other means.
 . . . .
 9. During the trial of this action, Defendan[t] did not introduce competent or substantial evidence on the factual considerations critical to the question of whether the Defendant's conduct fell within the scope of its discretionary governmental functions.
The trial court then concluded:
 5. Defendant Salt Lake County Commission voluntarily and knowingly waived and abandoned any defenses it may have had based on governmental immunity by (1) abandoning the defense in open court during argument on

Therefore, before we address whether the County is protected by governmental immunity in this case under the discretionary function exception, we first examine whether the County waived that argument at trial, which would preclude the County from now raising it on appeal.

### 1. Waiver of Governmental Immunity

The County argues that the trial court erred in concluding it waived its governmental immunity argument. The County argues that governmental immunity cannot be waived because governmental immunity implicates subject matter jurisdiction. We review the trial court's findings of fact for clear error and its conclusions of law for correctness. *See generally State v. Pena*, 869 P.2d 932, 935–36 (Utah 1994).

■ We have reviewed the County's argument that governmental immunity is a jurisdictional issue and reject it because both the Utah Supreme Court and this court have made several clear statements characterizing governmental immunity as an affirmative defense. For example, just last year, a unanimous Utah Supreme Court stated, "Immunity is an affirmative defense which must be proved by the defendant." *Nelson v. Salt Lake City*, 919 P.2d 568, 574 (Utah 1996); *see also C.T. v. Martinez*, 845 P.2d 246, 247 (Utah 1992) ("[S]overeign immunity is an affirmative defense."). This court has echoed this characterization of governmental immunity. *See Nielson v. Gurley*, 888 P.2d 130, 135 (Utah Ct.App.1994) ("[I]f the employee acted or failed to act through malice or fraud, the employee cannot successfully invoke governmental immunity *as an affirmative defense*." (emphasis added)).

In addition, the supreme court has explained that because governmental immunity is an affirmative defense, courts should employ a specific way of examining tort cases involving governmental immunity. In *Ferree v. State*, 784 P.2d 149 (Utah 1989), the supreme court explained:

> Defendant's Motion for Summary Judgment, (2) failing to raise the issue of governmental immunity in any subsequent argument, motion or pleading to the court, and (3) failing to

Sovereign immunity ... *is an affirmative defense and conceptually arises subsequent to the question of whether there is tort liability in the first instance.* There is sound reason and a desirable simplicity in analyzing and applying negligence concepts before deciding issues of sovereign immunity.... Conceptually, the question of the applicability of a statutory immunity does not even arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity.

*Id.* at 152–53 (emphasis added) (citation omitted). Both the supreme court and this court have since reiterated this concept. *See C.T.*, 845 P.2d at 247 ("[S]overeign immunity is an affirmative defense which arises conceptually after the determination of tort liability."); *Smith v. Weber County Sch. Dist.*, 877 P.2d 1276, 1278 (Utah Ct.App.1994) ("Normally, an appellate court will treat the traditional tort liability question before analyzing governmental immunity because 'sovereign immunity is an affirmative defense which arises conceptually after the determination of tort liability.' " (citations omitted)); *cf. Ambus v. Utah State Bd. of Educ.*, 858 P.2d 1372, 1378 (Utah 1993) ("Because it is an affirmative defense, the issue of qualified immunity arises after the plaintiff establishes a prima facie case under § 1983."). Thus, the supreme court and this court have continued to characterize governmental immunity specifically as an affirmative defense that is generally examined in tort cases only after the plaintiff has proven a duty of care.

This characterization of governmental immunity contradicts the County's characterization of governmental immunity as a component of subject matter jurisdiction. If governmental immunity were an issue of subject matter jurisdiction, a court would be required to examine governmental immunity before rather than after tort liability simply because if the court lacked subject matter jurisdiction, it would lack the authority to impose a legal decision. *See Salt Lake City v. Ohms*, 881 P.2d 844, 852 (Utah 1994)

> introduce evidence on the issue of the discretionary function exception during the trial of the case.

("Subject matter jurisdiction is 'the authority and competency of the court to decide the case.'" (citation and emphasis omitted)); *Glezos v. Frontier Invs.*, 896 P.2d 1230, 1233 (Utah.Ct.App.1995) ("'"[S]ubject matter jurisdiction goes to the very power of a court to entertain an action."'" (citations omitted)). Therefore, based on the supreme court's and this court's statements that specifically characterize governmental immunity as an affirmative defense that is generally examined after the question of tort liability, we reject the County's argument that governmental immunity is an issue of subject matter jurisdiction.

■ In addition to characterizing governmental immunity as an affirmative defense, the supreme court has specifically stated that the defendant has the burden of proving that it is shielded from liability by governmental immunity. *See Nelson*, 919 P.2d at 574. Thus, in this case, the County had the burden of proving that the discretionary function exception, which would provide it with governmental immunity, applied to this case.

However, the County wholly failed to both argue governmental immunity at trial and to produce any evidence supporting that argument. On the contrary, governmental immunity was not even addressed at trial. As such, the County failed to meet its burden of proving governmental immunity as an affirmative defense.

Moreover, after specifically telling the trial court in a pre-trial motion that it had decided not to pursue its argument of governmental immunity "at that time," the County, consistent with that statement, failed to argue governmental immunity until six months after the trial ended, which was over three years after it had told the trial court that it had decided not to pursue its governmental immunity argument. This course of inaction further emphasizes the County's failure to actively meet its burden of proving that it is shielded by governmental immunity in this case.

As a result of the County's inaction and failure to meet its burden at trial, we will not disturb the trial court's findings or conclusion that the County waived its affirmative defense of governmental immunity. Moreover, because we conclude that governmental immunity is an affirmative defense and that the County both waived that defense and failed to prove it at trial, we do not reach the issue of whether the County would be immune in this case under the discretionary function exception.

### 2. Rule 60(b) Motion

Despite its failure to argue and prove its governmental immunity defense at trial, the County has subsequently attempted to preserve this defense. Several months after trial, the County filed a motion for relief from the final judgment. One of the arguments brought under this motion was that the County was entitled to relief from the judgment under Rule 60(b) of the Utah Rules of Civil Procedure because the Utah Supreme Court's decision *Keegan v. State*, 896 P.2d 618 (Utah 1995), issued in March 1995, represented an intervening change in appellate law regarding governmental immunity. Attached as an addendum to the memorandum supporting this motion was Tosh Kano's affidavit. The trial court denied the County's motion because it concluded that *Keegan* did not represent a change of law sufficient to grant the County relief under Rule 60(b). The trial court also, upon Hart's motion, struck Kano's affidavit from the record. The County now challenges the trial court's denial of its Rule 60(b) motion and grant of Hart's motion to strike the affidavit. To succeed with its argument, the County must show the trial court's decision to deny its Rule 60(b) motion was an abuse of discretion. *See State v. Parker*, 872 P.2d 1041, 1045 (Utah Ct.App.1994).

Rule 60(b) provides:

On motion and upon such terms as are just, the court may in the furtherance of justice relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud ..., misrepresentation or other misconduct of an ad-

verse party; (4) when, for any cause, the summons in an action has not been personally served upon the defendant as required by Rule 4(e) and the defendant has failed to appear in said action; (5) the judgment is void; (6) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (7) any other reason justifying relief from the operation of the judgment.

Utah R. Civ. P. 60(b). The County argues that it is entitled to relief from the judgment under Rule 60(b)(7) because a change in law qualifies as "any other reason justifying relief from the operation of the judgment."

Whether a change of law qualifies as a reason justifying relief under subsection (b)(7) has not been decided by Utah courts. However, we need not reach this issue because the County's argument fails for another reason.

The County's argument is that *Keegan* contradicted dicta in *Sanford v. University of Utah*, 26 Utah 2d 285, 488 P.2d 741 (1971), in which the supreme court stated that section 63–30–10 was not intended to modify sections 63–30–8 and –9.[5] *See Sanford*, 488 P.2d at 745. The County argues that the significance of this dicta is that it meant the discretionary function exception does not apply to cases, such as this one, involving the negligent maintenance and construction of public roads. The County bolsters its argument that *Keegan* represents a change of law by examining the line of cases leading up to *Keegan* to show that they were in disagreement about whether the discretionary function exception applied to public road maintenance. For example, the County argues that the court in *Sanford* stated that section 63–30–10 did not apply to sections 63–30–8 and –9, *see Sanford*, 488 P.2d at 745, while the court in *Velasquez v. Union Pacific Railroad Co.*, 24 Utah 2d 217, 469 P.2d 5 (1970), found section 63–30–10 did apply to an action

brought under section 63–30–8, *see Velasquez*, 469 P.2d at 6.

■ However, the Utah Supreme Court has already squarely answered the County's argument in the negative. In *Keegan*, the court specifically stated that *Keegan* is distinguishable from *Sanford*, and thus does not represent a change in governmental immunity law. The supreme court stated as follows:

Keegan's reliance on this language [in *Sanford*] is misplaced: first, because the cited language is merely dictum, and second, because *Sanford* is readily distinguishable from the present case. In the case at bar, Keegan brought an action based on negligence, squarely raising the issue of whether section 63–30–10 applies to section 63–30–8 in the negligence context, whereas *Sanford* involved the interrelation of those two sections in a cause of action sounding in nuisance. In *Sanford*, the plaintiff brought a nuisance action against the University of Utah, alleging that it was liable for damages caused by a construction project which redirected the flow of surface water in such a manner that Sanford's home was flooded during a rainstorm. The University argued that for immunity to be waived under section 63–30–8, Sanford had to first demonstrate negligence on the part of a University employee pursuant to the terms of section 63–30–10. Sanford responded that her nuisance claim was allowed by the waiver of immunity in sections 63–30–8 and –9 and that a showing of negligence was not required by these sections under the facts of her case. Thus, the issue in that case was not whether a claim under section 63–30–8 was subject to the exceptions to waiver contained in section 63–30–10, but rather whether a claim sounding in nuisance, without any showing of negligence, could be brought under the Governmental Immunity Act. This court held that in a nuisance action brought under sections 63–30–8 and –9, negligence need not be shown and no part of section 63–30–10 should be applied to that claim. As a result, the

---

5. Sections 63–30–8 and –9 were both amended in 1991 to specifically apply the exceptions outlined in section 63–30–10. However, because this case arose before 1991, we examine the law as it existed before the 1991 amendments were made.

University's secondary defense, that it was immune because of the discretionary function exception, was not allowed because section 63–30–10 was not implicated in the action.... Moreover, in *Bigelow v. Ingersoll [*618 P.2d 50 (Utah 1980)*],* this court recognized the unique nature of nuisance and specifically limited *Sanford* to its facts.

*Keegan,* 896 P.2d at 622. This language from *Keegan* expressly states that *Keegan* did not represent a change in the law established by *Sanford.*

■ This court is bound by the doctrine of stare decisis to follow supreme court decisions. *See State v. Menzies,* 889 P.2d 393, 399 n. 3 (Utah 1994); *Beltran v. Allan,* 926 P.2d 892, 898 (Utah Ct.App.1996), *cert. denied,* 936 P.2d 407 (Utah 1997). This case, like *Keegan,* is an action based on negligence. Therefore, according to *Keegan, Sanford* is distinguishable from this case and the County may not be excused from its failure to argue the discretionary function exception based on its erroneous interpretation of *Sanford* and other case law. Consequently, we hold that the trial court did not abuse its discretion by denying the County's Rule 60(b) motion.[6]

### C. Rule 59 Motion for New Trial

■ We next address the County's final argument that the trial court erred by denying its motion for a new trial. We review the trial court's decision to deny the County's motion for a new trial under an abuse of discretion standard. *See Crookston v. Fire Ins. Exch.,* 817 P.2d 789, 804 (Utah 1991).

On February 1, 1995, the County moved for a new trial pursuant to Rule 59 of the Utah Rules of Civil Procedure. The County argued it was entitled to a new trial for several reasons. Two of those reasons were that the trial court had abused its discretion (1) by denying the County's motion for a mistrial after Hart's attorney commented on the amount of Hart's settlement with the Tweedys and (2) by ruling the County was

not entitled to have Hart included on the special verdict form for the purpose of fault apportionment. The trial court, however, denied the motion because it concluded the County's motion was procedurally defective because the County had not attached a supporting affidavit to the motion at the time the motion was filed. The County now appeals the trial court's conclusion and denial of its motion for a new trial.

Rule 59 provides, in relevant part:

(a) *Grounds.* Subject to the provisions of Rule 61, a new trial may be granted to all or any of the parties and on all or part of the issues, for any of the following causes

. . . .

(1) Irregularity in the proceedings of the court, jury or adverse party, or any order of the court, *or abuse of discretion by which either party was prevented from having a fair trial.*

. . . .

(7) Error in law.

. . . .

(c) *Affidavits; time for filing.* When the application for a new trial is made under Subdivision (a)(1) ... it *shall* be supported by affidavits. Whenever a motion for a new trial is based upon affidavits *they shall be served with the motion.* ...

Utah R. Civ. P. 59(a)(1), (a)(7), (c) (emphasis added). We review the trial court's decision to deny the County's motion for a new trial by examining, in turn, the County's two arguments that (1) the trial court abused its discretion by denying the County's motion for a mistrial after Hart's attorney commented on Hart's settlement with the Tweedys and (2) the trial court erred by ruling the County was not entitled to have Hart included on the special verdict form for the purpose of fault apportionment.

---

6. In addition, Kano's affidavit was merely submitted with the County's Rule 60(b) motion as a part of that motion. Because we have affirmed the trial court's conclusion that the Rule 60(b) motion lacked merit, that motion, including

Kano's affidavit submitted in support of it, has been evaluated and rejected. Therefore, we need not reach the County's argument that the trial court erred by striking Kano's affidavit.

### 1. Denial of Motion for Mistrial

A trial court's decision to grant or deny a motion for a mistrial is reviewed for an abuse of discretion. *See First Gen. Servs. v. Perkins,* 918 P.2d 480, 485 (Utah Ct.App. 1996) (" 'We will not overturn the trial court's decision to grant or deny a motion for a mistrial absent an abuse of discretion.' " (quoting *Rasmussen v. Sharapata,* 895 P.2d 391, 394 (Utah Ct.App.1995))); *see also Watkins & Faber v. Whiteley,* 592 P.2d 613, 616 (Utah 1979). Therefore, the part of the County's Rule 59 motion that was based on the trial court's denial of the County's motion for a mistrial was brought under Rule 59(a)(1), which governs motions for new trials brought due to an abuse of discretion. Because this part of the County's motion falls within Rule 59(a)(1), the County was required to follow the affidavit requirement of Rule 59(c), which requires that Rule 59(a)(1) motions be supported by an affidavit that is filed with the motion. *See* Utah R. Civ. P. 59(c).

The County does not argue that it submitted an affidavit with its motion. Instead, it argues "an affidavit was unnecessary as all of the relevant facts were contained in the record." However, the language of subsection (c) is mandatory. A motion for a new trial premised on the trial court committing an abuse of discretion "shall" be supported by an affidavit, which "shall be served *with the motion.*" *See id.* (emphasis added). The County did not follow that procedure in this case. Therefore, as the trial court concluded, the County's motion for a new trial based on its argument that the trial court abused its discretion by denying its motion for a mistrial was procedurally defective because it was not accompanied by a supporting affidavit. Consequently, we affirm the trial court's denial of the portion of the County's motion for a new trial that was based on the trial court's denial of the County's motion for a mistrial.

### 2. Denial of Request for Hart to be on Special Verdict Form for Purposes of Fault Apportionment

Although it submitted that part of its Rule 59 motion based on the trial court's failure to include Hart on the special verdict form as an abuse of discretion Rule 59(a)(1) motion, the County now argues that this issue actually is a Rule 59(a)(7) motion because it involves whether the trial court made an erroneous conclusion of law rather than whether the trial court abused its discretion. We agree. A special verdict form is a jury instruction, and determining the propriety of jury instructions presents a question of law we review for correctness. *See Ames v. Maas,* 846 P.2d 468, 471 (Utah Ct. App.1993). Therefore, that part of the County's Rule 59 motion which was based on the trial court's failure to include Hart on the special verdict form for purposes of apportioning fault fell within Rule 59(a)(7) and did not require an attached, supporting affidavit. As such, the trial court erred when it concluded that this part of the County's motion was procedurally defective because it was not accompanied by an affidavit.

However, our examination of the trial court's decision regarding the County's Rule 59 motion does not end here. Although the basis of the trial court's decision to deny the County's Rule 59 motion was incorrect, we may affirm the trial court's decision on any proper ground. *See Buehner Block Co. v. UWC Assocs.,* 752 P.2d 892, 895 (Utah 1988) (stating appellate courts "may affirm trial court decisions on any proper ground(s), despite the trial court's having assigned another reason for its ruling"). Consequently, because we conclude the County waived this argument by not specifically objecting on the record to the instruction at trial, we affirm the trial court's denial of the County's motion.

Rule 51 of the Utah Rules of Civil Procedure provides, in relevant part:

If the instructions are to be given in writing, all objections thereto must be made before the instructions are given to the jury; otherwise, objections may be made to the instructions after they are given to the jury, but before the jury retires to consider its verdict. No party may assign as error the giving or the failure to give an instruction unless he [or she] objects

thereto. In objecting to the giving of an instruction, a party must state distinctly the matter to which he [or she] objects and the grounds for [the] objection.

"If an objection is not made regarding the failure to give a jury instruction, the issue is deemed waived on appeal." *Anderson v. Sharp*, 899 P.2d 1245, 1248 (Utah Ct.App. 1995), *cert. denied*, 910 P.2d 426 (1995). The party claiming error, in this case the County, bears the responsibility for making sure that "[t]he grounds for any objection to the failure to give a jury instruction ... be distinctly and specifically stated on the record." *Id.* This requirement "ensures that the trial court will understand the basis for the objection and have an opportunity to correct any error before the case goes to the jury." *Id.*

■ The County has failed to show us where, in the record, it specifically objected to Hart's absence on the special verdict form. Our review of the record has not revealed any such objection nor any mention by the County to the trial court of the grounds upon which it would object to Hart's absence from the form. The County has attempted to salvage this argument by submitting Postma's affidavit, in which Postma testified that in an off-record conference in chambers with the trial court, the County requested that Hart be included on the special verdict form submitted to the jury, which request was denied by the trial court. However, the submission of this affidavit, although it proves the County did request that Hart be included on the special verdict form, is not enough to meet the County's requirement to timely make a specific objection on the record before the jury retired to consider its verdict. In addition, the affidavit does not specify whether the County stated the legal grounds for its request to the trial court. Thus, we conclude the County's failure to specifically and timely object on the record to Hart's absence from the special verdict form precludes the County from raising this issue on appeal. *See id.; cf. Reeves v. Gentile*, 813 P.2d 111, 119 (Utah 1991). Accordingly, we do not reach the issue of whether the trial court should have granted the County a new trial based on its alleged error of not including Hart on the special verdict form.

In summary, we reject each of the County's challenges to the trial court's orders. We next address the arguments Hart raises on cross-appeal.

### D. Damages Cap

Both of Hart's arguments on appeal challenge the trial court's imposition of the damages cap, which reduced the amount of damages owed by the County to Hart. The trial court reduced the damages to $250,000, including interest and costs, in accordance with Utah Code Ann. § 63–30–34(1) (1993). That statute provides:

(1)(a) Except as provided in Subsection (2), if a judgment for damages for personal injury against a governmental entity, or an employee whom a governmental entity has a duty to indemnify, exceeds $250,000 for one person in any one occurrence, or $500,000 for two or more persons in any one occurrence, the court shall reduce the judgment to that amount.

(b) A court may not award judgment of more than $250,000 for injury or death to one person regardless of whether or not the function giving rise to the injury is characterized as governmental.

*Id.* § 63–30–34(1)(a), (b). On cross-appeal, Hart argues that the damages cap violates several Utah constitutional provisions and that, in any case, the reduced judgment should not include interest and costs.

### 1. Constitutional Arguments

We first address Hart's argument that the damages cap statute violates several Utah constitutional provisions. Specifically, Hart argues that applying the damages cap to him violates article I, sections 1, 7, 10, 11, and 24, and article VI, section 26.

■ We may initially dispose of several of Hart's arguments because they have previously been rejected by the Utah Supreme Court. In *McCorvey v. Utah State Department of Transportation*, 868 P.2d 41 (Utah 1993) (plurality opinion), the trial court, following the statutory damages cap, had reduced a jury verdict from $1,517,800 to $250,000 in a personal injury action brought by McCorvey, a motorist, against the Utah

Department of Transportation (UDOT). On appeal, McCorvey challenged the constitutionality of the damages cap, arguing that imposition of the cap violated his rights under article I, sections 7, 10, 11, and 24 of the Utah Constitution. *See id.* at 47. The supreme court rejected McCorvey's arguments and affirmed the trial court's order reducing UDOT's damages to the $250,000 statutory limit under section 63–30–34(1). *See id.* at 48. The court's decision in *McCorvey* was reaffirmed three years later by a unanimous supreme court in *Bott v. DeLand,* 922 P.2d 732 (Utah 1996). In examining the constitutionality of subsections 63–30–34(1)(a) and (b) as applied to the case, the court in *Bott* stated, citing to *McCorvey,* "We have already held that these subsections are constitutional under article I, sections 7, 10, 11, and 24 of the Utah Constitution as applied to judgments for injuries resulting from a governmental entity's failure to maintain safe road conditions." *Id.* at 743. This court is obligated under the doctrine of stare decisis to accept the rulings of the supreme court. *See Menzies,* 889 P.2d at 399 n. 3; *Beltran,* 926 P.2d at 898. Therefore, because the supreme court has specifically rejected the same arguments Hart raises under article I, sections 7, 10, 11, and 24 of the Utah Constitution, we reject those constitutional arguments.

■ Hart also argues that the damages cap statute infringes upon the "fundamental right" guaranteed by article I, section 1 of the Utah Constitution that "[a]ll men have the inherent and inalienable right to enjoy and defend their lives and liberties." Utah Const. art. I, § 1. Specifically Hart argues that capping his damages award from the County denies him of his ability to enjoy his life and liberty.

However, Hart has failed to explain how his situation involves a liberty interest, or how his right to enjoy life has been infringed upon by the damages cap statute.[7] In addition, we find ourselves in agreement with the plurality opinion in *Condemarin v. University Hospital,* 775 P.2d 348 (Utah 1989) (plurality opinion), that "there is no fundamental right to recover unlimited damages from government entities performing governmental functions." *Id.* at 352.[8] After carefully considering Hart's argument, we conclude that Hart has not described to us an interest that rises to the level of a fundamental life or liberty interest protected by this constitutional provision. We therefore reject Hart's

7. The only law Hart cites to support his argument is *Bott v. DeLand,* 922 P.2d 732 (Utah 1996), which did not follow an article I, section 1 analysis. *Bott* involved a prisoner who sued because he received inadequate medical care that resulted in severe damages. The prisoner prevailed at trial, but, as in this case, his damages were reduced to $250,000 pursuant to the statutory damages cap. On appeal, the Utah Supreme Court held that the damages cap, as applied to that case, violated the prisoner's article I, section 9 right to be free of unnecessarily rigorous treatment. *See id.* at 744. We conclude that *Bott* is distinguishable from this case, and therefore not applicable, because it not only involved a completely different constitutional provision, but also because the factual situation was sufficiently distinct.

8. Furthermore, in *McCorvey v. Utah State Department of Transportation,* 868 P.2d 41 (Utah 1993), another plurality opinion, Justice Hall explained, while engaging in an analysis of the Utah open courts provision, that no common law right existed to sue the government for lack of maintenance on public roads. Justice Hall stated:

The government activity in question here is the maintenance of public roads. At common law, both the municipalities and the state were immune from lawsuits based on the negligent maintenance of public roads. Such activity traditionally has been considered governmental. Hence, there was no right at common law to recover for injury resulting therefrom.

Under the Act, governmental entities performing government functions are immunized from suit under the general grant of immunity contained in section 63–30–3 (1989). However, section 63–30–8 waives immunity for injury caused by a defective, unsafe, or dangerous condition of any state highway. The Act then limits that liability to $250,000 under section 63–30–34(1). Under our statutory scheme, the legislature actually created, rather than abrogated, a limited right of recovery against the state for negligent maintenance of its roadways.

*Id.* at 47–48 (plurality opinion) (footnotes omitted); *see also Niblock v. Salt Lake City,* 100 Utah 573, 577, 111 P.2d 800, 802 (1941) ("[T]he duty to repair or construct streets ... is a governmental one and ... in the absence of a statute no liability devolves on a municipality for the defective condition of its streets.").

article I, section 1 challenge to the damages cap statute.

■ Finally, we also acknowledge that Hart argues the damages cap violates article VI, section 26 of the Utah Constitution, which provides, "No private or special law shall be enacted where a general law can be applicable." In support of this argument, Hart's brief states only, "A 'special law' applies only 'to persons ... though not particularized, [that] are separated by any method of selection from the whole class to which the law might, but for such legislation, be applied.'" (Citation omitted.) No further analysis or citation to legal authorities is made to support this argument. "It is well established that this court will decline to consider an argument that a party has failed to adequately brief. Because of the inadequate analysis, we decline to address [Hart's article VI, section 26] claim on appeal." *State v. Vigil*, 922 P.2d 15, 28 (Utah Ct.App. 1996) (citations omitted).

In conclusion, we reject all Hart's constitutional challenges to the damages cap statute.[9]

## 2. Inclusion of Interest and Costs in Damages Cap

Hart also challenges the trial court's decision to include prejudgment and post-judgment interest and costs in the total reduced judgment amount of $250,000. Hart argues that the statutory damages cap of section 63–30–34(1)(a), especially when read in conjunction with other statutes, does not limit the amount of interest and costs. This argument requires us to review the trial court's interpretation of section 63–30–34(1)(a), a question of law we review for

correctness. *See S.H. v. Bistryski*, 923 P.2d 1376, 1379 (Utah 1996).

■ "'"The primary rule of statutory interpretation is to give effect to the intent of the legislature in light of the purposes the statute was meant to achieve,"'" *De Baritault v. Salt Lake City Corp.*, 913 P.2d 743, 746 (Utah 1996) (citations omitted), and the "best evidence of the legislature's intent is the plain meaning of the statute," *Cache County v. Utah State Tax Comm'n*, 922 P.2d 758, 767 (Utah 1996) (citation omitted). Therefore, to properly interpret section 63–30–34(1)(a), we look to the plain language of the statute and the language of the statutes comprising the Governmental Immunity Act, Utah Code Ann. §§ 63–30–1 to –38 (1993), and construe them according to their plain meaning. *See Carlie v. Morgan*, 922 P.2d 1, 3–4 (Utah 1996).

Section 63–30–34(1)(a) provides:

Except as provided in Subsection (2), if a judgment for damages for personal injury against a governmental entity, or an employee whom a governmental entity has a duty to indemnify, exceeds $250,000 for one person in any one occurrence, or $500,-000 for two or more persons in any one occurrence, the court shall reduce *the judgment* to that amount.

Utah Code Ann. § 63–30–34(1)(a) (1993) (emphasis added). Thus, the plain language of the statute requires the trial court to reduce "the judgment" to $250,000 in a personal injury action involving one person, as in this case.

■ Hart argues, citing Utah Code Ann. § 78–27–44 (1996),[10] that prejudgment

---

**9.** Hart also argues that the County is barred from relying on the damages cap statute because it waived and abandoned its governmental immunity argument at trial. However, because this argument was raised for the first time in Hart's reply brief, we decline to address it. *See State v. Brown*, 853 P.2d 851, 854 n. 1 (Utah 1992) (explaining why court will not address argument raised for first time in reply brief); *Von Hake v. Thomas*, 759 P.2d 1162, 1169 n. 6 (Utah 1988) (explaining that, as general rule, court will not consider an issue raised for first time in reply brief); *Broadbent v. Board of Educ. of Cache County Sch. Dist.*, 910 P.2d 1274, 1277 n. 4 (Utah Ct.App.) (declining to address issue raised for

first time in reply brief), *cert. denied*, 917 P.2d 556 (Utah 1996).

**10.** Section 78–27–44 provides:
 (1) In all actions brought to recover damages for personal injuries sustained by any person, resulting from or occasioned by the tort of any person, corporation, association, or partnership, whether by negligence or willful intent of that other person, corporation, association, or partnership, and whether that injury shall have resulted fatally or otherwise, the plaintiff in the complaint may claim interest on the special damages actually incurred from the date of the occurrence of the act giving rise to the cause of action.

interest is separate from the judgment. We disagree. Although section 78–27–44 both allows the plaintiff to claim prejudgment interest on special damages and requires the trial court to add that interest to the special damages, subsection (2) plainly states that the prejudgment interest is to be "include[d] . . . in th[e] judgment." *Id.* § 78–27–44(2). In other words, prejudgment interest is a part of, rather than separate from, the judgment. Although Hart has given us no statutory basis for his costs argument, our research indicates that costs incurred before a judgment is entered, like prejudgment interest, are included in, rather than treated separate from, a judgment. *Cf., e.g., id.* § 77–31a–101(21) (Supp.1996) (recodified as *id.* § 78–45f–101(21) (Supp. 1997)); *id.* § 77–32a–3 (1995). Therefore, because section 63–30–34(1)(a) required the trial court to reduce the County's portion of the judgment to $250,000, and because prejudgment interest and prejudgment costs are statutorily treated as a part of a judgment, we conclude the trial court did not err by including prejudgment interest and prejudgment costs in the $250,000 reduced judgment.

■ However, postjudgment interest, unlike prejudgment interest and costs, is not a part of a judgment, but is instead added to a judgment at a specified rate. *See id.* § 15–1–4(2) (1996). As the plain language of section 15–1–4(2) provides, judgments rendered in actions other than contractual actions "shall bear interest at the federal postjudgment interest rate as of January 1 of each year, plus 2%." *Id.* Thus, the postjudgment interest statute plainly describes postjudgment interest as interest which accrues on the judgment, and is therefore separate from the judgment. As such, we conclude the trial court erred by including postjudgment interest in the reduced $250,000 judgment.

Our conclusion is also supported by public policy. Postjudgment interest is imposed on liable parties to induce them to timely pay their just debts. Public entities, like others, should timely pay their debts and, like others, may need the added incentive of postjudgment interest to do so. Thus, after a public entity has been found liable and a judgment has been entered against it, it can best protect the public coffers by promptly paying the owed judgment rather than incurring unnecessary postjudgment interest.

The same policy applies to postjudgment costs incurred by doing such things as collecting the judgment. Rather than running the risk of incurring unnecessary postjudgment costs, a public entity can best protect the public coffers by cooperatively paying an owed judgment. Therefore, we also conclude that any postjudgment costs, like the postjudgment interest, should not be included in the $250,000 reduced judgment.

## CONCLUSION

We reject each of the County's arguments. The County failed to preserve for appeal its argument that it did not owe a duty to Hart. The County also waived its governmental immunity argument, an affirmative defense, by wholly failing to argue and prove it at trial and by specifically telling the trial court it had decided not to pursue this defense during a pre-trial motion, and then by not again mentioning that argument for over three years. In addition, the trial court did not abuse its discretion by denying the County's Rule 60(b) motion for relief because, as the Utah Supreme Court has already stated, *Keegan v. State* did not represent a change in governmental immunity case law. Finally, the trial court also did not abuse its discretion by denying the County's Rule 59 motion for a new trial because the County failed both to file an attached affidavit to support its Rule 59(a)(1) motion and to specifically

(2) It is the duty of the court, in entering judgment for plaintiff in that action, to add to the amount of special damages actually incurred that are assessed by the verdict of the jury, or found by the court, interest on that amount calculated at the legal rate, as defined in Section 15–1–1, from the date of the occurrence of the act giving rise to the cause of action to the date of entering the judgment, *and to include it in that judgment*

(3) As used in this section, "special damages actually incurred" does not include damages for future medical expenses, loss of future wages, or loss of future earning capacity.
Utah Code Ann. § 78–27–44 (1996) (emphasis added).

object on the record to the trial court's failure to include Hart on the special verdict form.

We also reject most of Hart's arguments. We reject all Hart's constitutional arguments because they have already been rejected by the Utah Supreme Court, they were inadequately briefed, or because Hart failed to describe to us an interest that rose to the level of receiving the requested constitutional protection. We also reject Hart's argument that the trial court erred by including prejudgment interest and prejudgment costs in the judgment because statutory language plainly describes prejudgment interest and prejudgment costs as a part of a judgment, and the damages cap statute plainly requires the trial court to reduce "the judgment" to $250,000.

However, we conclude the trial court erred in one respect. Statutory language plainly describes postjudgment interest as interest which accrues on, and is therefore separate from, a judgment. In addition, public policy supports the requirement that public entities, like others, timely pay owed judgments. Therefore, the trial court erred by including postjudgment interest and any postjudgment costs in the $250,000 reduced judgment.

We affirm in part but reverse and remand for the exclusive purpose of properly calculating postjudgment interest and costs incurred on appeal, which should then be added to the $250,000 judgment owed by the County to Hart.[11]

DAVIS, P.J., and BILLINGS, J., concur.

---

11. We note that both parties have raised issues on appeal that we have not addressed because they lack merit. *See State v. Carter,* 776 P.2d 886, 888 (Utah 1989).