James and Helen **PAULUS**, Plaintiffs,

v.

Roger S. **CORBLY**, et al., Defendants.

No. C–1–91–429.

United States District Court,
S.D. Ohio, W.D.

Dec. 22, 1992.

Richard Lanahan Goodman, Hermanies & Major, Cincinnati, OH, for plaintiffs.

Mark J. Huller and Michael Harvey Siegler, Cincinnati, OH, for defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE

SPIEGEL, District Judge.

This matter is before the Court on the Defendants' Motion for Summary Judgment (doc. 21), the Defendants' Amended Page 8 (doc. 24), the Plaintiffs' Response (doc. 25), the Defendants' Reply (doc. 31), the Defendants' Motion to Strike (doc. 32), the Plaintiffs' Response to the Defendants' Reply (doc. 35),[1] the Plaintiffs' Response (doc. 37), and the Defendants' Reply (doc. 39).

### BACKGROUND

This is a personal injury case filed against a motel.[2] For the purposes of resolving the Defendants' Motion for Summary Judgment, we have interpreted the facts in the light most favorable to the non-

---

1. The Plaintiff failed to seek leave to file an additional memorandum. However, in the interests of fully hearing the arguments in this case, the Court will consider the Plaintiffs' supplemental memorandum.

2. The Plaintiffs voluntarily dismissed without prejudice all claims against the individual shareholders of the Defendant Corbly & Burns, Inc.— Roger S. Corbly, Marlene Corbly, Glen A. Burns and Carol A. Burns. *See* doc. 28.

moving party, the Plaintiffs. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We have in no way determined the ultimate merits of this case.

On June 25, 1989, Plaintiff James Paulus, his wife, and his daughter stopped in Cincinnati to see a Reds game on their way home to Baltimore from a convention in St. Louis. The Paulus family registered for the night as guests at the Towne Center Motel (the "motel") on Central Parkway in Cincinnati. Defendant Corbly & Burns, Inc. ("Corbly & Burns") owned the motel.

Following the Reds game, the Paulus family returned to the motel. Mr. Paulus backed his car into one of the motel's parking spaces, which abutted a flat, mulch-covered area located between the parking lot and the sidewalk of the motel.[3] Between mulch-covered areas, paved walkways connected the motel sidewalks and the parking lot. Wooden timbers about one inch above the sidewalk,[4] five and a half inches wide, and eight feet long bordered the mulched area. The wooden timbers kept the mulch from spilling out onto the sidewalk and walkway, and also deterred people from walking through the mulched area. No wooden timbers lay between the mulched area and the parking lot. Instead, a concrete curb separated the mulched area from the parking lot. Lastly, the motel had not posted any signs instructing motel guests to stay off the mulched areas.

The Paulus family checked into their room without any problems. However, at approximately 10:30 p.m., Mr. Paulus decided to go down to his car to get some soft drinks for his family. While out at the car, Mr. Paulus decided to clean out some paper debris and trash from the trunk in preparation for leaving the next morning. Because the back end of his car extended into the mulched area, Mr. Paulus walked over the wooden timbers and into the mulched area so that he could open his trunk. After gathering the trash in the trunk, Mr. Paulus turned to his left to take the trash to a nearby garbage can. Taking a step or so toward the garbage can, Mr. Paulus stumbled upon a rust-colored, metal rod. The mulch partially hid the metal rod.

As a result of tripping over this rod, Mr. Paulus landed on his left side, striking his left elbow and his left hip. Previously, Mr. Paulus had received two hip operations in which doctors placed artificial joints into his left and right hips. Because of the blow to his hip, Mr. Paulus had to have his hip prosthesis surgically replaced, and has undergone two additional hospitalizations.

The metal rod which tripped Mr. Paulus had been placed in the mulched area by landscapers, who are co-Defendants in this case. Moreover, the Paulus family claims that the evening desk clerk admitted to them that she had recognized the dangers of the metal rod previously, and had bent the rod over into the position it was in when Mr. Paulus tripped over it. The evening desk clerk denies making such a statement to the Paulus family.

## STANDARD OF REVIEW

The narrow question that we must decide on a motion for summary judgment is whether there exists a "... genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court cannot try issues of fact on a Rule 56 motion, but is empowered to determine only whether issues exist that should be tried. *In re Atlas Concrete Pipe, Inc.,* 668 F.2d 905, 908 (6th Cir.1982).

The moving party "has the burden of showing *conclusively* that there exists no genuine issues as to a material fact and the evidence together with all inferences to be drawn therefrom must be read in the light

---

**3.** The Court assumes that the motel did not instruct its guests to park their cars in frontwards. Furthermore, the Court also assumes that the Paulus family parked their car within the painted parking lanes, if any.

**4.** The Defendants claim that the wooden timbers were about three and a half inches high. For the purposes of resolving the Defendants' Motion for Summary Judgment, however, we shall assume that the wooden timbers were one inch above the sidewalk.

most favorable to the party opposing the motion." *Smith v. Hudson,* 600 F.2d 60, 63 (6th Cir.) (emphasis in original), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). Moreover, "while the movant's papers are to be closely scrutinized, those of the opponent are to be viewed indulgently." *Id.* at 63. "[T]he District Court [is] obligated to consider not only the materials specifically offered in support of the motion, but also all 'pleadings, depositions, answers to interrogatories, and admissions' properly on file and thus properly before [the] court." *Id.* (quoting Rule 56(c), Fed.R.Civ.P.).

Summary judgment "must be used only with extreme caution for it operates to deny a litigant his day in court." *Id.* The Supreme Court elaborated upon this standard, in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial....

*Id.* at 322, 106 S.Ct. at 2552. Summary judgment is not appropriate if a dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Nevertheless, conclusory allegations are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir.1990).

## DISCUSSION

In moving for summary judgment, Defendant Corbly & Burns makes two arguments. We shall consider these in turn.

### The Legal Status of Mr. Paulus

 The obligations, or duty of care, by a landowner owed to a person upon the premises is prescribed by that person's legal status. Specifically, the court must determine if the person hurt on the premises is a trespasser, licensee, or an invitee. As a guest of the motel, the legal status of Mr. Paulus is that of invitee. *See* 76 *O.Jur.3d, Premises Liability* § 4 (1991) (an invitee provides a beneficial interest to the landowner). The landowner has a duty to an invitee to make sure that his premises are in a reasonably safe condition. *Id.* at § 7; *Presley v. Norwood,* 36 Ohio St.2d 29, 303 N.E.2d 81 (1973) (landowner owes a duty of ordinary care to an invitee). The landowner's duty to keep his premises in a reasonably safe condition includes a responsibility to warn invitees of latent or hidden perils of which the landowner knew or should have known. *Perry v. Eastgreen Realty Co.,* 53 Ohio St.2d 51, 372 N.E.2d 335 (1977).

 Defendant Corbly & Burns contends that by walking through the mulched area, Mr. Paulus exceeded his invitation on the premises, and became a licensee rather than an invitee. The legal status of a guest upon the premises may change from an invitee to a licensee when the guest exceeds the limit of her invitation. *Clary v. McDonald,* 120 Ohio App. 8, 200 N.E.2d 805 (Pickaway Co.1963).

Thus, the issue before the Court is whether Mr. Paulus exceeded the limits of his invitation at the motel. An invitee exceeds his invitation if the landowner could not reasonably anticipate the invitee's actions while on the premises. *See Kelly v. Catholic Daughters of Am.,* 19 Ohio L.Abs. 157 (Mahoning Co.1935) ("... the owner of real estate is not bound to make it safe for any purpose for which he could not reasonably anticipate it would be used, or in a mode for which it was not designed").

Defendant Corbly & Burns argues that it could not reasonably anticipate that Mr. Paulus would walk in the mulched area. We disagree. Because Mr. Paulus backed his car into the parking space at the motel, the rear of Mr. Paulus' vehicle partly extended into the mulched area. Certainly, the motel could foresee that some of its guests would choose to back their cars into the motel parking spaces, because then any

luggage contained in a car's trunk would not have to be carried as far to arrive at that guest's particular motel room.

As a result of backing his car into the parking space, Mr. Paulus could not get into the rear of his car and gain access to his trunk without necessarily walking onto the mulched area. This Court holds that a rational jury could determine that the motel should have reasonably anticipated that its guests would walk in the mulched area to unload their cars. If the Defendants were as intent upon keeping motel guests out of the mulched areas as they now proclaim, then they would have posted warnings about walking on the mulched area or they would have constructed a more formidable obstacle than wooden timbers one inch above the sidewalk.

The cases cited by the Defendant are not persuasive because of critical factual differences from the case at bar. In *Pryotely v. New York C & St. L R. Co.*, 28 F.2d 868 (6th Cir.1928), the defendant maintained a large ash pit at its railroad yard. Joseph Kirzman came to the railroad yard to apply for a job. A path led from the street into the defendant's railroad yard. The path passed between the sandhouse and the ash pit, which were about twenty feet apart. Mr. Kirzman proceeded down this path, but never made it to the office of the railroad yard, as he was found dead in the bottom of the ash pit. The *Pryotely* court concluded that Mr. Kirzman could not recover in his lawsuit, "because he was not invited to leave the path and wander away into a place of danger." *Id.* at 868.

The case now before this Court presents a different set of facts. A motel could reasonably anticipate that its guests might traverse over a flat, mulched area between the motel's rooms and the parking lot. As a matter of fact, a guest who had backed his car into the parking space would be forced to walk over the mulched area to open the trunk of his car. In contrast, we believe that it is far less likely for a railroad to anticipate that a job applicant would wander ten feet off of a path and fall into an ash pit. We expect that the prototypical reasonable man would use greater caution walking around a railroad yard fraught with potential danger than he would unloading his car at a motel.

Similarly, the decision in *Thompson v. Kent State Univ.*, 36 Ohio Misc.2d 16, 521 N.E.2d 526 (1987), differs importantly from the case at bar. In *Thompson*, the plaintiffs were parents of a student attending Kent State University. At Kent State University, the mother of a student was walking on the left side of an eight-foot sidewalk. Apparently, the mother voluntarily stepped off the sidewalk to avoid pedestrians approaching in the opposite direction. The area next to the sidewalk had become a dirt path, as students had worn away the grass from heavy use. Sitting as a finder of the fact and the law, the *Thompson* court determined that the plaintiffs had failed to prove that the area around the sidewalk was unsafe or that the university knew or should have known of a dangerous condition. *Id.*

In contrast, in Mr. Paulus' case, the jury has the right to make the factual determination whether the mulched area was in an unsafe condition. A rational finder of the fact could decide that a camouflaged metal rod in a mulched area constitutes an unsafe condition, whereas a worn area beside a sidewalk does not. The *Thompson* case did not involve a change in the legal status of the defendant. Instead, the *Thompson* court held that whatever the legal status of the plaintiff, the defendant did not breach its duty of ordinary care. Thus, the holding of the *Thompson* court does not persuade this Court that the legal status of Mr. Paulus changed when he walked onto the mulched area.

Accordingly, the legal status of Mr. Paulus is a question of fact for the jury. *See Brown v. The Baltimore & Ohio R.R. Co.*, Case No. C–1–90–824, —— F.Supp. —— (S.D.Ohio Aug. 21, 1992) (J. Spiegel) (holding that the legal status of a girl injured by a train was a question of fact for the jury); *Pa. R.R. Co. v. Vitti*, 111 Ohio St. 670, 146 N.E. 94 (1924) (where the evidence is conflicting the issue of an injured party's status is for the jury). Based upon its determination as to Mr. Paulus' legal status, the jury must then determine whether the Defendants breached their duty of care.

*The Cause of Mr. Paulus' Accident*

■ Defendant Corbly & Burns next argues that Mr. Paulus' decision to walk in the mulched area rather than to use the pavement was the proximate cause of his accident. Specifically, the Defendant maintains that the Plaintiff had a choice of two routes from his car to the trash can. Defendant Corbly & Burns essentially contends that it should not be punished for Mr. Paulus' foolish decision to exit the mulched area as he did.

In support of its argument, the Defendant cites to *Gaston v. Wilkins*, Case No. C–76833 (Hamilton Cty.Ct.App. Jan. 11, 1978) (attached as exh. F. to doc. 21). In *Gaston*, the plaintiff was walking on the sidewalk adjoining a street. During her walk, the plaintiff encountered a parked car blocking the sidewalk and extending into the driveway of the defendants. The plaintiff proceeded to walk around the car through a grassy area to the right. While walking through the grassy area, however, the plaintiff fell and hurt herself. The *Gaston* court noted that:

> "Where there are two ways of accomplishing a thing that needs to be done, the one a safe way, and the other unsafe, he who undertakes to perform the thing must choose the safe way, or choose the unsafe at his peril...."

*Id.* at 3 (quoting 39 *O.Jur.2d* 247, *Negligence* § 97 (1984).

The *Gaston* court essentially adopted the "choice of paths" rule. However, a court should only apply the choice of paths rule in certain situations:

> The 'choice of paths' rule applies only if two distinct routes exist, one clearly recognizable as safe and the other involving danger. The mere existence of alternative routes in itself does not make the choice of ways doctrine applicable. The path chosen must involve a danger so great and apparent that a person of ordinary prudence would not have used that way under the circumstances. There must be evidence that the Plaintiff made an unreasonable decision which exposed him to a hazard that he knew or should have known existed. There must be evidence of (1) a safe course; (2) a danger-

ous course and, (3) facts which would put a reasonable person on notice of the danger of actual knowledge of the danger. 57A *Am.Jur.2d, Negligence* § 903–04, at 799–800 (1992).

In the case before the Court, we cannot say that two *distinct* routes existed, let alone one that was clearly recognizable as safe and the other involving danger. After Mr. Paulus backed his car into the parking space, Mr. Paulus had to walk in the mulched area to open his trunk. Once Mr. Paulus' finished cleaning out the trash in his trunk, Mr. Paulus had to cross at least some portion of the mulched area to return to the pavement. As it turned out, Mr. Paulus turned to his left and took a step or so before he tripped on the metal rod concealed in the mulched area. As a matter of law, we do not believe that the path Mr. Paulus chose to exit the mulched area involved "... a danger so great and apparent that a person of ordinary prudence would not have used that way under the circumstances." *Id.* Of course, the jury will be able to determine if Mr. Paulus was contributorily negligent in his actions that evening.

## MOTION TO STRIKE THE AFFIDAVIT OF TERRI ABSHIRE

The Defendants have moved to strike the Affidavit of Terri Abshire. The Defendants argue that Terri Abshire is a surprise witness who they have not been able to cross-examine. The Defendants contend that her affidavit should not be considered in resolving the Defendants' Motion for Summary Judgment.

This Court has not used Terri Abshire's affidavit in resolving the Defendants' Motion in *any* way. Therefore, the Defendants' Motion to Strike is denied.

## CONCLUSION

Accordingly, the Defendants' Motion for Summary Judgment and to Strike is denied.

SO ORDERED.