Present: Carrico, C.J., Compton, Stephenson, Whiting,[1] Lacy, Hassell, and Keenan, JJ.

EMORY STEVE GARDNER

v.   Record No. 942047        OPINION BY JUSTICE HENRY H. WHITING
                                      September 15, 1995
KEVIN MICHAEL PHIPPS, et al.

FROM THE CIRCUIT COURT OF WISE COUNTY
J. Robert Stump, Judge

In this appeal, we deal with issues of contributory negligence, sudden emergency, and unavoidable accident arising from a vehicular collision.  Conforming to established appellate principles, we state the facts in the light most favorable to the defendant, the prevailing party in the trial court.

On the night of February 15, 1991, Emory Steve Gardner and his friend Tim Crawford were unable to drive to their own homes because of snowy weather.  Hence, they spent the night at the home of another friend, Mitchell Chester.  The next morning, the snow stopped around 9:00 a.m. and Gardner and Crawford travelled on the "main road"[2] to Pound to buy food for breakfast.  Although the road was "slippery and wet" from the snow, Gardner had no accident on the way to Pound.

Crawford suggested that they return to Chester's house by State Route 632, a shorter, but less travelled route than the main road.  The temperature was "about twenty degrees" and Route

_____

[1]Justice Whiting prepared the opinion in this case prior to the effective date of his retirement on August 12, 1995, and the Court subsequently adopted the opinion.

[2]The record fails to disclose any other designation or description of the "main road."

632 was still "[s]now covered and icy." Around 12:00 noon, Gardner was approaching a sharp curve on Route 632 in Wise County, driving his pickup truck between five and ten miles an hour on his side of the two-lane secondary road.

At the same time, Kevin Michael Phipps was approaching the curve in the opposite direction, driving a pickup truck. For the preceding three to four hours, Phipps had been delivering newspapers published by Bristol Newspapers, Inc. over what Phipps described as roads "completely covered" with snow. Although the Phipps truck was equipped with new snow tires and was loaded with bags of salt in the rear for traction, "plus some other newspapers," it had "skidded other times that morning."

As Phipps drove down what he described as "a medium grade," at a speed of "between five and ten miles an hour," he "lost control of [the truck]" before entering the curve when the truck "started . . . fishtailing or whatever." Phipps tried to regain control by steering the truck, but was unsuccessful.

However, Phipps's truck remained on its right side of the road until it reached the curve, where it entered Gardner's traffic lane. The left front of Phipps's truck struck the left front side of Gardner's truck in Gardner's traffic lane, pushing Gardner's truck off the road, over an embankment into a creek, injuring Gardner.

Gardner sued Phipps and Bristol Newspapers. Without objection, the court instructed the jury that Phipps and Gardner

had the duty to use

> that degree of care which an ordinarily prudent person
> would have exercised having regard to the duty of a
> driver to exercise increased caution in the face of
> known and obvious dangerous condition[s] of the
> roadway.

Over Gardner's objection, the trial court also instructed the jury on issues of contributory negligence, sudden emergency, and unavoidable accident. After the jury returned a verdict in favor of the defendants, the court entered judgment upon that verdict. Gardner appeals.

Noting that the evidence fails to show that he lost control of his vehicle or did anything to contribute to the accident, Gardner contends that the court erred in submitting the issue of contributory negligence to the jury. The defendants respond that Gardner's choice of Route 632, which was covered with snow and ice, rather than the "main road," which "was perfectly clear," was a "particular type of contributory negligence . . . known as the 'choice of paths' rule." The defendants argue that this issue was properly submitted to the jury on that theory.

According to the defendants, Virginia adopted the choice of paths doctrine in Ward v. Clark, 163 Va. 770, 776, 177 S.E. 212, 214 (1934). However, since the evidence in this case fails to show a choice between an obviously safe road and an obviously dangerous one, we need not decide whether and under what circumstances the so-called "choice of paths doctrine" will be

-3-

applied to the choice of roads open for travel to the public, as they were in this case.

Ward and the two cases that preceded Ward involved choices between obviously safe and obviously dangerous ways for a plaintiff to perform an act. Id. (choice between descending icy steps in front of apartment or covered steps at rear); Riverside & Dan River Cotton Mills, Inc. v. Carter, 113 Va. 346, 351, 74 S.E. 183, 185 (1912) (choice between servicing dangerous machine in inadequately lighted room at night or adequately lighted room in daylight); Street v. Norfolk & W. Ry., 101 Va. 746, 750, 45 S.E. 284, 285 (1903) (choice between working on railroad car from position on railroad tracks with other cars in vicinity and from position off tracks where no danger of being struck by other rolling cars).

In contrast, Gardner's actual or constructive knowledge that Route 632, a "curvy, narrow mountain" road, was not as well travelled as the main road and might be covered with snow and patches of ice did not present him with a choice between an obviously safe route and an obviously dangerous one to return to Chester's house. The main road itself was "slippery and wet" from the snow. And Gardner had negotiated both roads without incident until Phipps lost control of his truck and struck Gardner. Accordingly, the court erred in instructing the jury on the issue of contributory negligence based on the choice of paths doctrine.

-4-

Since we cannot determine upon what basis the jury returned its verdict for the defendants, and it may have been upon that of contributory negligence, we conclude that Gardner was prejudiced by this instruction. Ring v. Poelman, 240 Va. 323, 328, 397 S.E.2d 824, 827 (1990). If the evidence is substantially the same as that in the first trial, the trial court should not grant contributory negligence instructions.

Next, we consider whether the court erred in granting a sudden emergency instruction at Phipps's request. Gardner asserts that since Phipps's truck had skidded on the snowy road several times earlier that morning, he should have anticipated that his vehicle might skid or "fishtail" again; hence, he was not faced with a sudden emergency. Ordinarily, we would not consider this contention since it is asserted for the first time on this appeal. Rule 5:25. However, because the case will be remanded for a new trial and the same issue may arise on retrial, we will consider the contention.

> The word "emergency" is defined as "[a] sudden unexpected happening; an unforeseen occurrence or condition; . . . an unforeseen combination of circumstances that calls for immediate action." Black's Law Dictionary 469 (5th ed. 1979). See also Webster's Third New International Dictionary 741 (1981); Portsmouth v. Chesapeake, 205 Va. 259, 266, 136 S.E.2d 817, 823 (1964).

Garnot v. Johnson, 239 Va. 81, 86, 387 S.E.2d 473, 476 (1990). Here, the fact that Phipps's truck "fishtailed" or skidded was not an unexpected happening as claimed; the truck skidded several times earlier that morning as Phipps drove over the snowy roads

-5-

delivering newspapers. Thus, no reasonable inferences could be drawn that Phipps was faced with an "emergency" as that term is defined and applied in the sudden emergency doctrine. Id. Accordingly, this instruction should not be granted on retrial if the evidence is substantially the same.

Next, we decide whether the court erred in instructing the jury that "an unavoidable accident is one which ordinary care and diligence could not have prevented or one which occurred in the absence of negligence by any party to this action." We have stated the controlling rule as follows:

> [I]t is rarely permissible to give an unavoidable accident instruction in automobile accident cases . . . . This follows because we have recognized that few automobile accidents occur without fault [and] we have recognized that such an instruction is apt to give a jury "an easy way of avoiding instead of deciding the issue made by the evidence."

Chodorov v. Eley, 239 Va. 528, 531, 391 S.E.2d 68, 70 (1990) (citations omitted).

In our opinion, this is not one of those rare cases in which "there is a reasonable theory of the evidence under which the parties involved may be held to have exercised due care, notwithstanding that the accident occurred." Id. at 531-32, 391 S.E.2d at 70 (quoting Bickley v. Farmer, 215 Va. 484, 488, 211 S.E.2d 66, 69-70 (1975) and Batts v. Capps, 213 Va. 174, 175-76, 191 S.E.2d 227, 228 (1972)). Although Phipps saw no other vehicles on Route 632, he noticed the tracks of other vehicles that had preceded him and had apparently negotiated the curve

-6-

without incident.  This indicates that Phipps also could have descended the hill without losing control of his vehicle. Accordingly, it was error to grant the instruction.

Finally, we reject the defendants' argument that even if the instructions were erroneously granted, "such errors were harmless because it plainly appears from the record that they could not have affected the verdict."  This argument is based on the premise that "the evidence failed to establish negligence on the part of Phipps."  In our opinion, there was sufficient evidence to submit the issue of Phipps's negligence to the jury and we also note that the defendants did not assign cross error to that action of the court.  Thus, we cannot say that the errors were harmless.

Because of the trial court's error in granting the contributory negligence and unavoidable accident instructions, we will reverse the judgment and remand the case for a new trial.

<u>Reversed and remanded.</u>