2000 Utah Ct. App. 239

**Cheryl HOLMSTROM, Plaintiff and Appellant,**

**v.**

**C.R. ENGLAND, INC., a Utah corporation; and Joseph Hyatt, an individual, Defendants and Appellees.**

**No. 990354–CA.**

Court of Appeals of Utah.

Aug. 3, 2000.

Peter C. Collins and Walter F. Bugden, Budgen, Collins & Morton, Salt Lake City, for Appellant.

Nelson L. Hayes, Office of General Counsel, and George T. Naegle, Richards, Brandt, Miller & Nelson, Salt Lake City, for Appellees.

Before JACKSON, Associate P.J., BENCH and BILLINGS, JJ.

## OPINION

JACKSON, Associate Presiding Judge:

¶ 1 Cheryl Holmstrom challenges the trial court's denial of her requests for two jury instructions and her motions for judgment notwithstanding the verdict (JNOV) and, alternatively, for a new trial. We affirm.

## BACKGROUND

¶ 2 "In reviewing a jury verdict, we view the evidence in the light most favorable to it, and recite the facts accordingly." *Ortiz v. Geneva Rock Prods., Inc.,* 939 P.2d 1213, 1215 (Utah Ct.App.1997) (citation omitted).

¶ 3 On September 29, 1993, Joseph Hyatt, while working for C.R. England, Inc., was driving a semi-tractor (without a trailer attached) northbound on Park Street in a residential area of Salt Lake City. Park Street ended in a T-intersection at Division Lane. At the intersection, Hyatt prepared to make a right turn onto Division. He stopped behind the curb, then slowly crept straight forward and stopped with the nose of his truck protruding into the intersection. He could see better from that vantage point and observed no vehicles coming toward him on westbound Division. An S-curve started about 120 feet east on Division, and Hyatt could not see vehicles past the S-curve.

¶ 4 Hyatt had begun his turn when he saw Holmstrom about thirty feet away driving her car toward him in a westerly direction on Division. He stopped the truck, but not before at least part of his truck extended about two to eight feet into the westbound lane of Division. He was stopped for between one and two seconds before Holmstrom's car hit his truck.

¶ 5 Division Lane was about thirty-five feet wide from curb to curb. Parked cars were on the south side of the street, but none were on the north side of the street (westbound) adjacent to the accident scene. The police officer who diagramed the accident scene thus measured from the north curb to the edge of the cars parked along the south curb to come up with what he called "the usable portion of the road," which was about twenty-eight feet. Basing his calculations on the usable portion of the road, Holmstrom's accident reconstruction expert, Ronald Probert, testified that "the point of impact is ... two feet, one inch to the south of the usable portion center of the roadway." In other words, according to Probert, Holmstrom was "about four feet, six inches left of center" based on the usable portion of the road. Further testimony established that that would place Holmstrom's car entirely left of center, except for maybe the passenger side tires. Probert further testified that "[t]here is a very good likelihood" that the accident would have occurred even if Hyatt had been able to make his turn wholly in his own lane (the eastbound lane of Division). Probert also testified that, with Hyatt stopped as he was, Holmstrom could have avoided the accident by driving past him on her right in her own lane.

¶ 6 Other testimony showed Holmstrom's perspective as she approached the point of impact. She was driving westbound through the S-curve on Division. Probert testified that drivers tended to straighten out the S-curve as they came through it—meaning they generally drove down the center of the road. Holmstrom followed that general tendency and was driving in about the center of the road when she came out of the S-curve and saw Hyatt's truck slowly turning in her direction. She did not decelerate or move to her right, but continued at her rate of twenty-five to thirty miles per hour and was distracted as she glanced down at the clock or the speedometer for about one-half to three-quarters of a second.

¶ 7 When Holmstrom looked up, she was about fifty-five feet from the point of impact. She realized for the first time that a potential

problem existed and she might collide with Hyatt. By the time she perceived the gravity of the situation and reacted by slamming on her brakes, she was about forty-eight feet from the point of impact; however, at her rate of speed, she needed about fifty-eight feet, or one-half second more reaction time, to stop. She thus hit Hyatt. The skid marks she left before the point of impact on Division Lane were parallel to the curbs, veering neither left nor right.

¶ 8 Holmstrom filed suit against Hyatt and C.R. England, alleging that Hyatt's negligence caused the damages she sustained in the accident. After both parties presented their evidence at trial, Holmstrom proposed two jury instructions. The first presented the theory that a finding of negligence could be based on a driver's selection of an unsafe route. The trial court refused to give that instruction. The second was a "sudden peril" proximate cause instruction that Holmstrom had changed from the uniform instruction. *See* Model Utah Jury Instruction 4.3 (1993). The trial court thought the proposed instruction was somewhat confusing and invited Holmstrom to try to clarify and resubmit it. Holmstrom did not raise the issue again.

¶ 9 Holmstrom also moved for a directed verdict, arguing any reasonable juror would have to conclude that Hyatt was negligent and that his negligence was the proximate cause of Holmstrom's damages. The trial court denied Holmstrom's motion, stating "that there is enough evidence in the support of a jury verdict going either way, depending which witnesses [the jury] chose to believe."

¶ 10 The jury returned a verdict finding Hyatt negligent, but determining that his negligence was not a proximate cause of Holmstrom's injuries. Holmstrom brought a motion for JNOV on the issue of proximate

cause, along with a new trial on the remaining issues, or, alternatively, for a new trial on all the issues. The trial court denied Holmstrom's motion, ruling:

> [T]here is substantial evidence to suggest that the defendants [sic] negligence did not play a substantial role in causing the accident and the plaintiff's injuries, and therefore the jury, applying jury instruction no. 34,[1] could reasonably conclude that defendant's negligence was not a proximate cause of the accident and plaintiff's injuries. The record contains testimony from experts and lay witnesses suggesting that defendant's negligence did not play a substantial role in causing the accident or the plaintiff's injuries.

¶ 11 Holmstrom appeals, arguing the trial court erred as a matter of law in refusing to give her two proposed jury instructions and to grant her motion for JNOV. She further argues the trial court abused its discretion in denying her new trial motion, which was based on the insufficiency of the evidence supporting a finding that proximate cause was lacking.

### ANALYSIS

#### I. Unsafe Route Instruction

¶ 12 "A trial court's decision regarding jury instructions presents a question of law, which is reviewed for correctness." *Vitale v. Belmont Springs*, 916 P.2d 359, 361 (Utah Ct.App.1996). However, for the trial court's refusal to give a jury instruction " '[t]o require a new trial, we must also conclude the error was prejudicial, i.e., that it "tend[ed] to mislead the jury to the prejudice of the complaining party or insufficiently or erroneously advise[d] the jury on the law." ' " [2] *Id.* at 363 (citations omitted; alterations in original).

---

1. Jury Instruction No. 34 reads:

   If you determine that either Mr. Hyatt or Ms. Holmstrom was negligent, then you must also decide whether that negligence was a "proximate cause" of any of Ms. Holmstrom's injuries.
   To find "proximate cause," you must first find a cause and effect relationship between any such negligence and any of Ms. Holmstrom's injuries. But cause and effect alone is

   not enough. For an injury to be proximately caused by negligence, two other factors must be present:
   1. The negligence must have played a substantial role in causing the injury; and
   2. A reasonable person could foresee that some injury could result from the negligence.

2. We probably could have summarily disposed of this jury instruction issue because of lack of prejudice. After all, the jury instruction goes to

¶ 13 Having presented evidence that Hyatt was negligent in selecting his route over another allegedly safer route for a large truck to make a turn, Holmstrom unsuccessfully asked the trial court to instruct the jury as follows: "You may find, depending on the facts and circumstances of this case, either or both drivers negligent not only for their driving conduct itself but also, if he or she or both knew the route taken was hazardous, for taking that route." At Holmstrom's behest, we must determine whether the trial court's refusal to give this "unsafe route" instruction was incorrect.

¶ 14 Under the unsafe route rule, a person who voluntarily chooses a dangerous path over a safe path, and who is injured as a result, is considered to be *contributorily negligent*. A "choice of ways" [or unsafe route] instruction is warranted where there is evidence that the *plaintiff* made an unreasonable decision that exposed him to a hazard of which he knew, or reasonably should have known, and a safe course of travel existed by which he could have avoided the danger.

*Robinson v. Daisy Constr. Co.*, No. 88–4111, 1990 WL 209321, at *4, 1990 U.S. Dist. LEXIS 17030, at *12–13 (E.D.Pa. Dec. 12, 1990) (citation omitted; emphasis added); *see also* 57A Am.Jur.2d *Negligence* § 903, at 799 (1989) ("Where a person has a choice between two courses or methods, one of which is perfectly safe and the other subject to obvious risks, and voluntarily chooses the latter and is injured, he is guilty of *contributory negligence ....*") (emphasis added).

¶ 15 Even a quick read of the definition of the unsafe route doctrine reveals the flawed logic in raising it in this case. The definition specifically applies to *plaintiffs* in the *contributory negligence* context.[3] In this case,

Holmstrom seeks to apply it to hold a *defendant* negligent.

¶ 16 Even so, Holmstrom tries to support her asserted entitlement to an "unsafe route" jury instruction by citing to three Utah cases and an Illinois case, which she admits all involve the contributory negligence of plaintiffs who were injured as pedestrians. *See Blacconeri v. Aguayo*, 132 Ill.App.3d 984, 88 Ill.Dec. 231, 233, 235–36, 478 N.E.2d 546, 548, 550–51 (1985) (involving pedestrian hit by car while crossing busy street); *Wightman v. Bettilyon's Inc.*, 15 Utah 2d 200, 201–02, 390 P.2d 120, 121 (1964) (involving pedestrian tripping on weeds growing over sidewalk); *Wold v. Ogden City*, 123 Utah 270, 273–75, 258 P.2d 453, 455–56 (1953) (involving pedestrian crossing trench in street); *Baker v. Decker*, 117 Utah 15, 18–23, 212 P.2d 679, 681–83 (1949) (involving pedestrian tripping over obstruction in apartment building hallway). Holmstrom's argument for extending this doctrine to the negligence of defendants driving vehicles on public streets is so cursory that it borders on violating our rules of appellate procedure, which require that a legal argument presented to this court "contain the contentions and reasons of the appellant with respect to the issues presented ... with citations to the authorities [and] statutes ... relied on." Utah R.App. P. 24(a)(9). She gives us no analytical tools or public policy reasons for expanding the doctrine to hold defendant-drivers negligent. Holmstrom merely states: "There is nothing, in law or logic, and contrary to the District Court's determination, that suggests that the principle recognized in those cases (which are pedestrian cases in the contributory negligence realm) should not apply to the negligence of an operator of a motor vehicle."

the question of Hyatt's negligence (Holmstrom argues his choice of an unsafe route could be one basis upon which the jury could have found him negligent). However, the jury *did* find him negligent, although we cannot guess exactly which of his actions the jury targeted; it is proximate cause that remains the issue, not negligence. Nonetheless, because Holmstrom put a bit of a proximate cause spin on her argument about this jury instruction, we address it out of an abun-

dance of caution to ensure Holmstrom that we have fully considered her arguments.

3. Contributory negligence is "[a] plaintiff's own negligence that played a part in causing the plaintiff's injury and that is significant enough (in a few jurisdictions) to bar the plaintiff from recovering damages. ● In most jurisdictions, this defense has been superseded by comparative negligence." *Black's Law Dictionary* 1056 (7th ed.1999).

¶ 17 We initially observe that the unsafe route doctrine "is said to have a narrow scope of application, and it has been noted that many cases refuse to apply the doctrine, and suggest that it is to be applied in only the clearest cases." 57A Am.Jur.2d *Negligence* § 903, at 800 (1989). Our own survey of how the unsafe route doctrine has been applied in the United States confirms its narrow scope in that we found not one case in which it has been applied to a defendant *or* the driver of a motor vehicle (whether defendant or plaintiff), let alone to a defendant-driver. *See, e.g., Joyce v. Atlantic Richfield Co.,* 651 F.2d 676, 680, 682 (10th Cir.1981) (plaintiff-seaman on ship); *Paulus v. Corbly,* 809 F.Supp. 561, 566 (S.D.Ohio 1992) (plaintiff-pedestrian in parking lot); *Robinson,* 1990 WL 209321, at *4, 1990 U.S. Dist. LEXIS 17030 at *13 (plaintiff-pedestrian in workplace); *Connelly v. Redman Dev. Corp.,* 533 P.2d 53, 55 (Colo.Ct.App.1975) (plaintiff-pedestrian in parking lot); *Lynn v. District of Columbia,* 734 A.2d 168, 169, 172–73 (D.C. 1999) (plaintiff-pedestrian); *State v. Dwenger,* 168 Ind.App. 90, 341 N.E.2d 776, 779–80 (1976) (same); *Lindloff v. Duecker,* 217 Iowa 326, 251 N.W. 698, 702 (1933) (same); *Hicks v. Board of Supervisors of La. State Univ.,* 189 So.2d 90, 97–98 (La.Ct.App.1966) (same); *Rountree v. Lerner Dev. Co.,* 52 Md.App. 281, 447 A.2d 902, 902–03, 905 (1982) (same); *Tichenor v. Lohaus,* 212 Neb. 218, 322 N.W.2d 629, 631–32, 634 (1982) (plaintiff-pedestrian on icy ramp); *Dunbar v. City of Lumberton,* 105 N.C.App. 701, 414 S.E.2d 387, 389 (1992) (plaintiff-pedestrian); *Thornton v. Weaber,* 380 Pa. 590, 112 A.2d 344, 346–47 (1955) (same); *Meadows v. Heritage Village Church & Missionary Fellowship, Inc.,* 305 S.C. 375, 409 S.E.2d 349, 352 (1991) (same); *Moore v. Miles,* 108 Utah 167, 168, 170–72, 158 P.2d 676, 676, 677–78 (1945) (involving plaintiff-pedestrian falling down hotel steps).

¶ 18 It is true that parties in four cases we found tried to use the unsafe route doctrine as Holmstrom has—applying it to defendants and/or drivers. However, those parties were all unsuccessful, for one reason or another. *See, e.g., Cutsforth v. Kinzua Corp.,* 267 Or. 423, 517 P.2d 640, 642–43 (1973) (affirming trial court in defendant-driver case in disallowing alternate route allegation in complaint based on failure to state facts showing defendant owed plaintiff duty to use alternate route and in disallowing introduction of certain evidence about alternate routes, although not discussing general rule that alternate route doctrine applies only to plaintiffs in contributory negligence context); *Gardner v. Phipps,* 250 Va. 256, 462 S.E.2d 91, 93 (1995) (declining to decide in plaintiff-driver case "whether and under what circumstances the so-called 'choice of paths doctrine' will be applied to the choice of roads open for travel to the public" because "the evidence in this case fails to show a choice between an obviously safe road and an obviously dangerous one"); *Grube v. Moths,* 56 Wis.2d 424, 202 N.W.2d 261, 266 (1972) (affirming trial court in defendant-driver case in disallowing proof of "alternate-course rule," saying facts of case did not allow application of rule and quoting rule from contributory negligence case, but not stating rule did not apply because case involved vehicle or defendant instead of plaintiff-pedestrian).[4]

¶ 19 Only one case explicitly discussed and rejected the applicability of the doctrine to defendant-drivers:

> [Plaintiff] … contends that the court erred in failing to give an "alternate safe path" instruction to the jury. [Plaintiff] requested an instruction to the effect that [defendant] could be found negligent if he chose a risky course of travel when a safer alternative path was available. . . .

---

4. Hailing back to 1917, we did find one case in which a plaintiff was allowed to offer proof that the defendant, the driver of a cab in which plaintiff was a passenger during an accident, could have chosen a safer route. *See Hathaway v. Coleman,* 35 Cal.App. 107, 169 P. 414, 414 (1917). However, that case did not involve the refusal to give a jury instruction as this case does. Like in *Hathaway,* Holmstrom was allowed to present proof that Hyatt could have chosen a safer route; the trial court here simply refused to give a specific instruction about unsafe routes. Still, because it is not at issue in this case, we do not opine regarding whether Utah law actually gave Holmstrom the right—had she been challenged—to present her proof that Hyatt had a safer route available to him.

[Plaintiff] has presented no authority to support the contention that the alternate safe path instruction is required in a motor vehicle case. In fact, the existence of the "safer" alternatives advanced by [plaintiff] was vigorously disputed by the parties at trial. In reviewing the matter, the trial court determined that, because it instructed the jury concerning the claimed violation of duties of turning the vehicle from a direct path, inattentive driving, and careless driving, there was no need to give an instruction involving an alternate path since that standard of care was subsumed in the instructions given. In instructing the jury in regard to the violations of a driver's duties under the Delaware Motor Vehicle Code, the Superior Court provided the jury with a correct and complete statement of the law concerning [defendant's] duty under the circumstances of the accident. Accordingly, we find no error in the trial court's refusal to give the instruction requested by [plaintiff].

*Cox v. Turner*, No. 214, 1994, 1995 WL 379237, **2–3, 1995 Del. LEXIS 224, *5–7 (Del. Apr. 11, 1995); *see also* 57A Am.Jur.2d *Negligence* § 150, at 211 (1989) ("In a proper case, the jury may be instructed about certain specific circumstances and their relationship to the standard of care.... The better practice in most cases, however, may be to simply instruct the jury that the defendant was bound to exercise that reasonable care and caution which would be exercised by a reasonably prudent and cautious person under the same or similar circumstances.").

¶ 20 Like the Delaware Supreme Court, we can say that no need existed to give an unsafe route instruction because "that standard of care was subsumed in the instructions given." *Cox*, 1995 WL 379237, at **2–3, 1995 Del. LEXIS 224, at *7. For instance, the jury in this case was instructed that drivers of any vehicle should use reasonable care to avoid endangering others and may expect others to obey the law and use reasonable care. The jury was further instructed about right-of-way laws and the duty of a driver to keep a "proper lookout" and turn only when reasonably safe. Thus, the trial court's jury instructions regarding a driver's statutory and general duties gave the jury "a correct and complete statement of the law concerning [Hyatt's] duty under the circumstances of the accident." *Id.*

¶ 21 Based on Utah law applying the unsafe route doctrine only to plaintiff-pedestrian cases involving contributory negligence, in keeping with the overwhelming majority rule in the United States, along with the sufficiency of the applicable jury instructions in this case, we conclude that the trial court correctly refused to give the unsafe route jury instruction proposed by Holmstrom.[5]

## II. "Sudden Peril" Jury Instruction

■ ¶ 22 Holmstrom next challenges what she characterizes as the trial court's refusal to give the "sudden peril" jury instruction she modified from Model Utah Jury Instruction (MUJI) 4.3. However, our review of the record shows that Holmstrom did not properly preserve this issue for appeal.

---

5. Our conclusion relieves us of considering the broader question of whether the unsafe route principle remains at all viable in Utah, considering that the Legislature has discarded contributory negligence in favor of comparative negligence. *See* Utah Code Ann. § 78–27–37 to –43 (1996 & Supp.1999) (comparative negligence statute); 2 *Comparative Negligence Manual* § 64:1 (Clark Boardman Callaghan 1995) ("The Utah legislature first adopted comparative negligence in 1973.... The intent of the legislature in passing the act was [among other things] ... to alleviate the harshness of the old common law doctrine of contributory negligence...."). At least one state has refused to apply the unsafe route principle— even to a plaintiff-pedestrian—since replacing contributory negligence with comparative negligence. *See Chlebowski v. United States*, 548

F.Supp. 1221, 1223 (W.D.Pa.1982) ("[D]efendant relies on the so-called 'choice of paths' doctrine which, it asserts, bars plaintiff from recovery as a matter of law.... Defendant overlooks however what the ... cases make clear. The 'choice of paths' doctrine is merely a form of contributory negligence.... Contributory negligence has been abolished in Pennsylvania and a comparative negligence system installed in its place. For this reason, the choice of paths doctrine does not bar plaintiff's recovery.") (citations omitted). *But see Morgan v. McCrory*, No. 02A01–9604–CV–00072, 1997 WL 266816, at *1, 2–3, 1997 Tenn. App. LEXIS 343, at *4, 9–10 (Tenn.Ct.App. May 20, 1997) (allowing use of unsafe route principle to bar plaintiff's recovery under comparative negligence regime).

¶ 23 The modified instruction Holmstrom requested is as follows:

You may appropriately determine that Mr. Hyatt's negligence was a proximate cause of Ms. Holmstrom's injuries if, *but not only if,* you find: (1) that Mr. Hyatt negligently caused a situation of sudden peril; and (2) that Ms. Holmstrom, acting under the impulse of fear, made an instinctive effort to escape; and (3) in so doing, Ms. Holmstrom sustained injuries, even though it might now appear that Ms. Holmstrom's attempt to escape was unwise or should have been made differently.

(Emphasis added.) Meanwhile, MUJI 4.3 reads:

If you find: (1) that the defendant negligently caused a situation of sudden peril; and (2) that the person in peril, acting under the impulse of fear, made an instinctive effort to escape; and (3) in so doing, that person sustained injuries or injured a third person, then you may find that defendant's negligence was the proximate cause of the injury, even though it might now appear that the attempt to escape was unwise or should have been made differently.

Model Utah Jury Instruction 4.3 (1993).

¶ 24 The trial court and Holmstrom's counsel had the following discussion about the use of the modified jury instruction:

THE COURT: Is there another way to phrase that so that, I'm not sure that I understood it when I read it what the "but not only if" does to the phrase.

MR. COLLINS: I know and I struggled with how to word it to tell you the truth.

THE COURT: What about an introductory sentence that simple [sic] spells out your concerns that this instruction is not to be considered in isolation.

. . . .

THE COURT: . . . . Is there a way to do the introductory that kind of makes clear for the jury that is not, your case doesn't live or fall on this one instruction?

MR. COLLINS: You know and we've got to keep this thing moving. What this is going to require is a couple of minutes of me seeing what I can come up with and seeing if Mr. Naegle [defendants' counsel] and I can work it out. Could I have a couple of minutes to see what I can create and see if Mr. Naegle will agree with it?

THE COURT: I'll let you do that.

¶ 25 Defendants argue that this colloquy shows that Holmstrom did not properly preserve this issue for appeal—that she never gave the trial court a chance to definitively rule one way or the other on this instruction. We agree.

¶ 26 "It is axiomatic that, before a party may advance an issue on appeal, the record must clearly show that it was timely presented to the trial court *in a manner sufficient to obtain a ruling thereon.*" *Salt Lake County v. Carlston,* 776 P.2d 653, 655 (Utah Ct.App.1989) (emphasis omitted & added); *see also Hart v. Salt Lake County Comm'n,* 945 P.2d 125, 129 (Utah Ct.App. 1997) (" ' "A matter is sufficiently raised if it is submitted to the trial court, and the court is afforded an opportunity to rule on the issue." ' ") (citations omitted). Moreover, the party must specifically raise the issue, such that it is brought "to a 'level of consciousness' before the trial court." *Hart,* 945 P.2d at 130 (quoting *James v. Preston,* 746 P.2d 799, 802 (Utah Ct.App.1987)). This requirement "serve[s] the interests of judicial economy and orderly procedure" by not only giving the trial court a chance to correct error, but by making the parties "crystallize issues prior to appeal." *State v. Sixteen Thousand Dollars U.S. Currency,* 914 P.2d 1176, 1179 (Utah Ct.App.1996). When issues are not brought to the trial court's attention in a timely manner, they are "deemed waived, precluding this court from considering their merits on appeal." *Carlston,* 776 P.2d at 655.

¶ 27 During the colloquy with the trial court, Holmstrom's counsel explicitly agreed with the trial court that the proposed jury instruction's wording was confusing. Then, he offered to rework the language to make it more suitable and resubmit the instruction later. While the trial court expressed some concern over the instruction, it certainly did not conclusively rule one way or the other as to whether the instruction could be used as it was. The conversation was noncommittal on

both sides, with resolution of the issue left open to a future time when Holmstrom's counsel would presumably initiate the resubmission of the issue.

¶ 28 We therefore conclude that Holmstrom, through her counsel, did not present her jury instruction request "in a manner sufficient to obtain a ruling thereon." *Carlston*, 776 P.2d at 655. Based on the colloquy, we do not think the trial court was conscious that Holmstrom viewed its informal musings to be an unequivocal final answer. *See Hart*, 945 P.2d at 130. In a related vein, Holmstrom did not give the trial court a real chance to correct possible error. *See Sixteen Thousand Dollars U.S. Currency*, 914 P.2d at 1179. Had the trial court thought that the colloquy marked its only chance to rule on the issue, it may have given the issue more time and thought, recognizing the potential of being overturned on appeal and the spectre of a new trial. Finally, had the trial court and parties thought the issue was being decided once and for all, they may have taken the opportunity to provide additional and more specific legal analysis, "crystalliz[ing]" this issue before appealing. *Id.* Accordingly, Holmstrom failed to properly preserve this argument for appeal.

### III. Denial of Motions for JNOV and New Trial

¶ 29 Holmstrom briefed the denial of her JNOV and new trial motions as separate issues. However, because her arguments are essentially the same for each issue, we treat them together. At bottom, Holmstrom contends that there was insufficient evidence to support the jury's finding that Hyatt's negligence was not the proximate cause of her damages. She specifically argues that evidence was lacking as to the "substantial role" component of proximate cause.[6]

[A]n insufficiency-of-the-evidence based challenge to a denial of either [a JNOV or new trial] motion is governed by one standard of review: we reverse only if, viewing the evidence in the light most favorable to the party who prevailed, we conclude that the evidence is insufficient to support the verdict.

*Hansen v. Stewart*, 761 P.2d 14, 17 (Utah 1988). Because Holmstrom's challenge to the denial of her motions attacks the sufficiency of the evidence, she " 'must marshal all the evidence supporting the verdict' and then show that the evidence cannot support the verdict." *Id.* at 17–18 (quoting *Price–Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.*, 713 P.2d 55, 58 (Utah 1986)).

¶ 30 Holmstrom has quite admirably fulfilled her marshaling duty, filling her brief with five pages of "EVIDENCE CONCEIVABLY IN SUPPORT OF THE VERDICT," appropriately cited to the record. With Holmstrom conceding that such a profusion of evidence supports the verdict, it is somewhat difficult to understand her assertion that there is "literally no evidence which would support a reasonable jury's determination that there was not a proximate cause connection between Mr. Hyatt's negligence and the sustaining of injuries and damages by Ms. Holmstrom." However, we will give her the benefit of the doubt and a full analysis resolving her concerns.

### A. Relationship between Negligence and Proximate Cause

¶ 31 Before addressing the sufficiency of the evidence, we address a basic misconception held by Holmstrom. She intimates that a finding of negligence necessarily leads to a finding of proximate cause here, stating her *"research has unearthed no Utah or other case involving factual situations and issues like this one, and in which a jury found a defendant to be negligent, in which a jury's no-proximate-cause determination has been upheld."* She apparently contends that a finding of proximate cause necessarily follows a finding of negligence except in cases

---

6. As recited in footnote one, Jury Instruction Number 34 outlines the definition of proximate cause. The parties do not appear to contest the existence of a cause and effect relationship between Hyatt's negligence and Holmstrom's damages or the foreseeability of the damages. For all practical purposes, they focus exclusively on the requirement that "[t]he negligence must have played a substantial role in causing the injury." We thus follow their lead and, based on our analysis, need not consider the other elements of proximate cause anyway.

involving "situations where all damages are in dispute (as in situations involving low-speed rear-end collisions and/or situations involving pre-existing medical conditions where the medical evidence is mixed), and in multi-actor and substantial passage-of-time situations."

¶ 32 Holmstrom completely misapprehends the law here. In *every* case, negligence and proximate cause are "separate and distinct factors in assigning tort liability." 57A Am.Jur.2d *Negligence* § 438, at 421 (1989). Proof of negligence is never "enough by itself to establish liability; it must also be proved that negligence was a cause of the event which produced the injury or harm sustained by the one who brings the complaint." *Id.; see also Buck v. Union Elec. Co.*, 887 S.W.2d 430, 433 (Mo.Ct.App. 1994) ("It is axiomatic that the mere fact that injury follows negligence does not necessarily create liability. Plaintiff must also prove the negligent conduct ... was a[ ] ... proximate cause of his injury."). As our supreme court has stated, "Certainly there is no inconsistency necessary or otherwise, between findings of negligence and no proximate cause." *Bennion v. LeGrand Johnson Constr. Co.*, 701 P.2d 1078, 1083 (Utah 1985).

¶ 33 And, the fact that Holmstrom's research unearthed no cases similar to this one in which an appellate court upheld a finding of negligence and no proximate cause is not compelling. First, "[d]etermination of substantiality and proximity of the causal relationship between negligence and injury is dependent upon the particular facts of each case and it is seldom that one decision controls another." *Buck*, 887 S.W.2d at 433 (applying "relevant principles of law" to scrutinize specific facts of case instead of comparing to other factual situations).

¶ 34 Second, the three cases Holmstrom cites to support her position that proximate cause follows negligence are each factually distinguishable. *See Hardison v. Bushnell*, 18 Cal.App.4th 22, 22 Cal.Rptr.2d 106, 106–09 (1993) (involving traffic accident in which defendant completely obstructed plaintiff's lane, accident occurred entirely in plaintiff's lane, and plaintiff never left his lane of travel); *Murteza v. State*, 7 Conn.App. 196, 508 A.2d 449, 450–51, 453 (1986) (involving traffic accident with no other cause but defendant's negligence; jury verdict still not overturned because damages not sufficiently proven); *Rogers v. DiChristina*, 195 A.D.2d 1061, 600 N.Y.S.2d 402, 403 (1993) (involving two separate traffic accidents with two separate defendants, thus falling in multi-actor category of which Holmstrom speaks).

¶ 35 Finally, we were able to find three two-party traffic accident cases—including one from Utah—factually similar to the one at issue (i.e., not involving significant damages disputes; low-speed, rear-end collisions; pre-existing medical conditions; multiple actors; or substantial passage of time between the negligent act and the damages) in which the no-proximate-cause determination was upheld, despite the defendant's negligence. *See Tennyson v. Brower,* 823 F.Supp. 421, 423, 424 (E.D.Ky.1993) (affirming jury's verdict that, although defendant-trucker was negligent per se for parking on highway shoulder, he was not proximate cause of plaintiff's damages sustained when plaintiff fell asleep while driving and hit defendant's truck); *Ten Hagen v. DeNooy*, 563 N.W.2d 4, 6, 9 (Iowa Ct.App.1997) (upholding jury verdict that defendant-driver was negligent in encroaching upon plaintiff's lane—as Hyatt did in case at bar—but finding that negligence "was not a 'substantial factor' in producing the damages and, therefore, it was not a proximate cause of damages sustained by plaintiff"); *Sumsion v. Streator–Smith, Inc.*, 103 Utah 44, 47, 49–52, 132 P.2d 680, 681, 682–83 (1943) (affirming grant of defendant's non-suit motion and deciding that, even if fact finder had found defendant-driver negligent in failing to signal, plaintiff had not shown proximate cause between failure to signal and damages).

B. Sufficiency of the Evidence

¶ 36 The crucial question now is whether the evidence in this case supports the jury's finding that Hyatt's negligence was not a proximate cause of Holmstrom's damages. We specifically focus on whether Hyatt's negligence "played a substantial role in causing the injuries."

¶ 37 While the jury's special verdict form shows that the jury found Hyatt negligent, it does not specify which of Hyatt's actions were negligent. Our appraisal of the evidence suggests the jury may have found Hyatt negligent for violating Holmstrom's right of way, failing to keep a proper lookout, or choosing an unsafe route. We now catalog the evidence in favor of the jury's verdict that none of these potentially negligent actions were a substantial factor in causing Holmstrom's damages.

¶ 38 Hyatt testified that: he did not block Holmstrom's lane and that she could have driven around him on her side of the road; Holmstrom's car was left of the center of the road, more in his lane; he stopped when he saw Holmstrom, two to three seconds before impact, and tried to reverse his truck; at the time of impact, only his front driver's side tire was in plaintiff's lane; and the collision occurred partly in his lane.

¶ 39 Ronald Probert, plaintiff's accident reconstructionist, testified that: Holmstrom looked down at her instrument panel as she approached Hyatt; Hyatt's truck was moving slowly and was easy for Holmstrom to see; Holmstrom needed about fifty-eight feet to react to avoid the accident, but did not physically react until she was forty-eight feet away; Holmstrom needed about one-half second longer to react to avoid the accident; it is plausible that Hyatt was stopped for a couple of seconds before impact; if Hyatt was stopped, Holmstrom could have gone around him in her own lane; calculating from the usable portion of the road, Holmstrom's car was four feet, six inches left of center at the point of impact; under the facts stated in the police report, Holmstrom had about a ten-foot wide space in her own lane to get around the truck, while Holmstrom's car was only about five-and-a-half feet wide; and "[t]here is a very good likelihood" that the accident would still have occurred even if Hyatt had remained entirely in his own lane.

¶ 40 Edward France, plaintiff's "human factors" expert, testified that: the accident may have been caused by Holmstrom being distracted as she glanced at her instrument panel for about one-half to three-quarters of a second, with only three-and-a-half seconds until impact; at fifty-eight feet from the point of impact, Holmstrom had time to and could have chosen to either stop or go around Hyatt to her right; and Hyatt may have been stopped when Holmstrom hit him.

¶ 41 Raymond Gurule of the Salt Lake City Sanitation Department, who had been driving through the neighborhood doing his trash pickup route at the time of the accident, testified that a car could have gotten around Hyatt in the westbound lane. James Johnson, Holmstrom's former boyfriend, testified that Holmstrom's car was partially left of center at the point of impact.

¶ 42 Holmstrom testified that: she possibly glanced at the clock or speedometer while approaching Hyatt's truck; she did not remember slowing or moving to the right side of the road upon seeing Hyatt's truck; and she may have been over the center line as she neared the truck.

¶ 43 Dr. Ronald Wooley, Hyatt's accident reconstructionist, testified that: from the time Holmstrom first saw Hyatt's truck moving slowly, she had ample time to react and avoid the truck by either stopping or steering to the right; with the amount of time available to Holmstrom to react and avoid before the accident, the accident should never have happened; Holmstrom could see Hyatt before he could see her and there was never a time during which the truck would not have been obvious to Holmstrom; Holmstrom should not have glanced at her instrument panel when approaching the truck, squandering a second, when it would have taken her only a half second longer than she ended up with to completely stop; Holmstrom's judgment was erroneous in not tracking the truck until it stopped and yielded; Holmstrom was traveling at about 27.7 miles per hour when she started braking and 21.3 miles per hour at impact; there was no sign that Hyatt's truck was still moving when Holmstrom hit him; Holmstrom was traveling straight and in the middle of the road when she hit Hyatt; by traveling in the center of the road, Holmstrom delayed Hyatt's ability to see her; and Holmstrom had nine to eleven feet to Hyatt's right in which to pass him.

¶ 44 Salt Lake Police Officer Reed Garff, who investigated the accident, testified that: Holmstrom was not paying attention to where she was going because she was watching her clock as she approached Hyatt's truck; he did not recall seeing any garbage cans along the westbound lane of Division near the accident scene; Holmstrom's skid marks were parallel to the edges of the road, going straight; it appeared to him that Hyatt's truck was stopped when hit; Holmstrom's car was considerably left of the center of the usable roadway when the accident occurred; and Hyatt tried to prevent the accident by stopping and trying to reverse his truck.

¶ 45 Holmstrom has not attacked the credibility of these witnesses. She simply argues that this sizable body of testimonial evidence does not support the verdict that Hyatt's negligence was not the proximate cause of—or, more specifically, did not play a substantial role in causing—her damages. We disagree.

¶ 46 In analyzing the evidence and inferences, we must focus on what the term "substantial role" entails.

> The word "substantial" is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called "philosophic sense," which includes every one of the great number of events without which any happening would not have occurred. Each of these events is a cause in the so-called "philosophic sense," yet the effect of many of them is so insignificant that no ordinary mind would think of them as causes.

Restatement (Second) of Torts § 431 cmt. a (1965). Further, the actor's negligent conduct is not a substantial factor in bringing about harm to another if the harm would have been sustained even if the actor had not been negligent. *Id.* § 432(1); *see also* W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 41, at 268 (5th ed. 1984) ("[N]o case has been found where the defendant's act could be called a substantial factor when the event would have occurred without it...."); 57A Am.Jur.2d *Negligence* § 464, at 444 (1989) ("[A]n actor's negligent conduct is not a substantial factor in bringing about harm to another if the harm would have been sustained even if the actor had not been negligent.... The proximate cause ... must be, at the least, something without which the event would not happen.").

¶ 47 Regarding the potential that the negligence at which the jury verdict was directed was a violation of Holmstrom's right of way and/or failing to keep a proper lookout,[7] the evidence shows that this accident very likely would have occurred despite those of Hyatt's possible negligent acts. In fact, Holmstrom's own expert stated as much. Even if Hyatt had remained in his own lane, the testimony supports the scenario that, after Holmstrom saw Hyatt's truck, she distracted herself by glancing down away from the road and did not veer from her course down the middle of the road or even slow down initially. Under one reading of the evidence, the accident occurred mainly on Hyatt's side of the road and due to Holmstrom's own failure to yield the right of way. Because the evidence supports the theory that the accident likely would have happened regardless of Hyatt's negligence, that negligence cannot be a substantial factor in causing Holmstrom's damages. *See* Restatement (Second) of Torts § 432(1) (1965).

¶ 48 As to the potential negligence of Hyatt's choice of route, the jury could very well have found that such an action was more a cause in a " 'philosophic sense' " than in a "popular sense." *Id.* § 431. In other words, the accident certainly would not have occurred had Hyatt been on a completely different road, but that is more of a cause in the

---

7. Hyatt's possible failure to keep a proper lookout could not have been a substantial factor apart from its association with failure to yield the right of way. After all, if Hyatt had remained in his own lane throughout his turn, despite the other possibly negligent act and under the scenario supporting the jury verdict, the accident would likely have happened anyway because Holmstrom was well over the center line of the usable portion of the road and would have struck Hyatt whether he saw her immediately or not.

abstract. The jury could have used their common sense to decide that choice of route alone—when it comes to driving operational public roads in a non-negligent way—is not something that a typical reasonable person would blame for the injuries sustained in an accident. Such a cause is arguably quite remote, or "so insignificant that no ordinary mind would think of [it] as [a] cause[ ]." *Id.*

¶ 49 Accordingly, we conclude the trial court acted within its discretion in determining that the testimony marshaled here, together with reasonable inferences drawn from that testimony, is more than adequate to support the verdict.

### CONCLUSION

¶ 50 We conclude that the trial court correctly declined to use the unsafe route jury instruction requested by Holmstrom. We further conclude that Holmstrom did not adequately preserve for appeal her argument about her proposed sudden peril jury instruction. Finally, because ample evidence supports the jury's finding of no proximate cause, we cannot say the trial court abused its discretion in denying Holmstrom's motions for JNOV or a new trial. Thus, the jury verdict remains intact.

¶ 51 I CONCUR: JUDITH M. BILLINGS, Judge.

¶ 52 I CONCUR IN THE RESULT: RUSSELL W. BENCH, Judge.