**2013 UT App 226**

## THE UTAH COURT OF APPEALS

ROBERT D. PROCTOR,
Plaintiff and Appellant,
*v.*
COSTCO WHOLESALE CORPORATION,
Defendant and Appellee.

Opinion
No. 20120122-CA
Filed September 19, 2013

Third District, Salt Lake Department
The Honorable Tyrone E. Medley
No. 080920146

Matthew H. Raty, Attorney for Appellant
Kristin A. Van Orman, Jeremy G. Knight, and
K. Marie Kulbeth, Attorneys for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGES GREGORY K. ORME and WILLIAM A. THORNE JR.[1] concurred.

ROTH, Judge:

¶1 Robert Proctor appeals from the unfavorable result in his negligence suit against Costco Wholesale Corporation. Specifically, Proctor asserts that the trial court improperly granted a partial directed verdict in favor of Costco on two of his allegations of negligence and abused its discretion when it declined to reinstate one of the two allegations after Costco elicited testimony on the issue during the presentation of its defense. Proctor also challenges

---

1. Judge William A. Thorne Jr. participated in and voted on this case as a member of the Utah Court of Appeals. He retired from the court before this decision issued.

the trial court's denial of his own motion for directed verdict. Finally, Proctor claims that there was insufficient evidence to support the jury's verdict in favor of Costco. We affirm.

BACKGROUND

¶2 On May 8, 2008, Proctor arrived to shop at a Costco store in Murray, Utah, approximately fifteen minutes before it opened for the day. While Proctor was waiting outside the store, Jerryl Holtkamp, a Costco member service supervisor and the store's safety coordinator, came into the parking lot pushing a wheel base, on which twelve orange traffic cones were stacked. Holtkamp chatted with Proctor while she set out three of the cones. As she pushed the wheel base with the remaining cones, it caught on a crack in the sidewalk, spilling the stack of cones to the ground. Holtkamp asked Proctor to move the stack of cones back onto the wheel base because "[h]e looked healthy enough, strong enough" to lift them. Holtkamp was unable to lift the stack herself because she had a physician-imposed twenty-pound lifting restriction as a result of an elbow injury as well as a weak arm and shoulder. The cones were base-weighted and weighed twelve to twenty pounds each.

¶3 The parties disagree about what happened next. Proctor testified that because he believed the cones to be lightweight plastic, he bent at the waist, grabbed the cones by sticking two fingers into an opening in the cone at the top of the stack, and tried to yank the stack upright. As he yanked, Proctor felt a tear in his shoulder, causing him to drop the cones. At that point, according to Proctor, Holtkamp issued a warning about how heavy the cones were and urged Proctor to use care. Holtkamp, on the other hand, testified that Proctor "picked up the black bases with his right arm and [used] his left arm . . . at the tip" per her direction to "lift the black part up on to the [wheel] base, but be careful because they are heavy." Prior to actually lifting the cones, however, Proctor dropped the cones and said, "Jerryl, I think I hurt my shoulder."

The parties agree that Holtkamp then removed a couple of cones from the stack and asked Proctor to lift them again. Proctor refused because he had injured his shoulder.

¶4    Proctor then entered Costco where he completed his shopping and reported his injury to management. After leaving Costco, Proctor immediately saw a doctor, who referred him to physical therapy. When the therapy did not improve his shoulder, Proctor scheduled an appointment with an orthopedic surgeon. Proctor underwent surgery in late June 2008 to repair a severed biceps tendon and a torn labrum.

¶5    Proctor sued Costco, alleging a single cause of action for negligence. The case proceeded to trial where the parties stipulated to a jury instruction outlining Proctor's allegations[2] of negligence against Costco:

> (1) Placing its employee, Jerryl Holt[k]amp in a position she could not perform on her own;
>
> (2) Spilling the stack of cones over;
>
> (3) Asking a non-employee to help perform a task for Costco;
>
> (4) Failing to warn Mr. Proctor that the cones were weighted and heavy, until after he lifted them; and
>
> (5) Failing to instruct Mr. Proctor on how to lift the stack of cones.

Following Proctor's case-in-chief, Costco moved for directed verdict on the first three allegations. The court granted Costco's

---

2. The parties treat Proctor's allegations of negligence as distinct factual components of a single claim of negligence. We will also use the term "allegations" for convenience and consistency without attributing any legal significance to the term.

request as to the first two allegations but determined that there was prima facie evidence of the remaining allegations of negligence. Costco then put on its defense, which included calling Holtkamp as a witness. After Holtkamp testified that she was using care in pushing the cones, Proctor moved to "restore [the] deleted allegation . . . asserting that Ms. Holtkamp was negligent in spilling the stack of cones" on the basis that Costco "opened the door . . . on Ms. Holtkamp's conduct in spilling these cones." The trial court denied that request, explaining, "There's nothing in Ms. Holtkamp's testimony that would modify this Court's ruling." After Costco completed the presentation of its case, Proctor moved for directed verdict in his favor. The trial court denied Proctor's motion, and the jury concluded that Costco had not been negligent with respect to the remaining allegations. Proctor appeals, challenging the grant of partial directed verdict in favor of Costco, the denial of his own motion for directed verdict, and the sufficiency of the evidence to support the jury's verdict.

## ISSUES AND STANDARDS OF REVIEW

¶6 Proctor challenges the trial court's rulings on both parties' motions for directed verdict. Appellate courts review the grant or denial of a motion for directed verdict for correctness. *Gilbert Dev. Corp. v. Wardley Corp.*, 2010 UT App 361, ¶ 15, 246 P.3d 131. Accordingly, we "'will sustain a directed verdict if[,] after examining all evidence in a light most favorable to the non-moving party, there is no competent evidence that would support a verdict in the non-moving party's favor.'" *Id.* (alteration in original) (quoting *Ferguson v. Williams & Hunt, Inc.*, 2009 UT 49, ¶ 19, 221 P.3d 205). We will affirm the denial of a motion for directed verdict when a review of the evidence in a light most favorable to the non-moving party demonstrates that "reasonable minds could disagree with the ground asserted for directing a verdict." *Florez v. Schindler Elevator Corp.*, 2010 UT App 254, ¶ 8, 240 P.3d 107 (citation and internal quotation marks omitted).

¶7    Proctor also contends that there is insufficient evidence to support the jury's verdict in favor of Costco.

> In reviewing a jury verdict, we view the evidence in the light most supportive of the verdict, and assume that the jury believed those aspects of the evidence which sustain its findings and judgment. Accordingly, we will upset a jury verdict only upon a showing that the evidence so clearly preponderates in favor of the appellant that reasonable people would not differ on the outcome of the case.

*Billings v. Union Bankers Ins. Co.*, 918 P.2d 461, 467 (Utah 1996) (citations and internal quotation marks omitted).

ANALYSIS

I. Grant of Partial Directed Verdict to Costco

¶8    Proctor contends that the trial court improperly granted Costco's motion for partial directed verdict on the first two allegations. In particular, Proctor claims that directing the verdict was error because prior to trial, Costco had agreed to allow him to offer additional evidence on these allegations during Costco's defense and because Costco had withdrawn its motion with respect to the first allegation prior to the court's ruling. Proctor points to the following representations during argument on Costco's partial directed verdict motion as evidence that the trial court's ruling was error:

> [Proctor's Attorney]: [W]e're going to prove a lot of the negligence in this case through the testimony of Costco's employee[s] which [Costco's attorney] and I discussed and she said she was bringing them to trial. I didn't need to call them in my case in chief, that I would be able to examine them when she called them. . . .

> . . . And [negligence is] going to be well developed as I examine those witnesses who will be called this afternoon.
>
> . . . .
>
> [Costco's Attorney]: Now, on the one with Ms. Holtkamp, placing her in a position [she could not perform (allegation one)], I could understand where he may want to talk with the supervisors, that's fine
> . . . .

Proctor contends that rather than granting Costco's request for partial directed verdict, the court should instead have reserved a ruling on the motion until after he had cross-examined Costco's witnesses. *See* Utah R. Civ. P. 50(a) (explaining that directed verdict is appropriate only after the close of the non-moving party's evidence).

¶9    Proctor is correct that, in light of the parties' stipulation and Costco's withdrawal of its motion regarding allegation one, the trial court should have waited to rule on Costco's motion for partial directed verdict until after Proctor finished presenting his case, including anticipated cross-examination of certain of Costco's own witnesses.[3] Proctor has not demonstrated, however, that this error

---

3. Costco does not deny that it stipulated before trial that Proctor could put on a portion of his case-in-chief through cross-examination of certain Costco witnesses during the presentation of Costco's defense case. And Costco has provided no satisfactory explanation for why it apparently violated that agreement by moving for partial directed verdict based on the insufficiency of the evidence after Proctor had put on only his own witnesses. That we ultimately rule against Proctor for other reasons should not be taken as an endorsement of Costco's conduct.

prejudiced him, and a harmless error does not require reversal.[4] *See Covey v. Covey*, 2003 UT App 380, ¶ 21, 80 P.3d 553 ("Harmless error is defined . . . as an error that is sufficiently inconsequential that we conclude there is no reasonable likelihood the error affected the outcome of the proceedings. . . . On appeal, the appellant has the burden of demonstrating an error was prejudicial—that there is a reasonable likelihood that the error affected the outcome of the proceedings." (citations and internal quotation marks omitted)); *see also* Utah R. Civ. P. 61 ("Harmless error"). We conclude that Proctor was not prejudiced by the court's error in directing a verdict on the first two allegations because he cannot establish, as a matter of law, that any negligence by Costco in assigning Holtkamp the task of setting out the cones or any negligence by Holtkamp in spilling the cones was a legal, or proximate, cause of his injury. *See generally Webb v. University of Utah*, 2005 UT 80, ¶ 9, 125 P.3d 906 ("[A] plaintiff must establish four essential elements [to prove negligence]: (1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, (3) that the *breach of duty was the proximate cause* of the plaintiff's injury, and (4) that the plaintiff in fact suffered injuries or damages." (emphasis added) (citation and internal quotation marks omitted)).[5]

---

4. Proctor also claims that the court erred when it later declined "to restore th[e] deleted allegation . . . asserting that Ms. Holtkamp was negligent in spilling the stack of cones over." For the same reasons that we hold that the error in granting the partial directed verdict was harmless, any error in the court's refusal to reinstate the allegation was harmless.

5. The parties did not address proximate cause in their briefing, but the issue was discussed at oral argument. Appellate courts have the authority to affirm the district court on any basis apparent on the record. *See Bailey v. Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158. We elect to do so here because it is clear that Proctor cannot establish proximate cause as a matter of law.

(continued...)

¶10 Proximate cause is "[a] cause that directly produces an event and without which the event would not have occurred." *Black's Law Dictionary* 250 (9th ed. 2009). To prove proximate cause, however, it is not enough to show that a negligent act brought about the injury; rather, a plaintiff must demonstrate that the act was the "efficient, producing cause" of the injury, *CSX Transp., Inc. v. McBride*, 131 S. Ct. 2630, 2642 (2011) (internal quotation marks omitted), meaning "that cause which, in a natural and continuous sequence, unbroken by any new cause, produced the injury, and without which the injury would not have occurred," *Bunker v. Union Pacific R.R. Co.*, 114 P. 764, 775 (Utah 1911). *See also Holmstrom v. C.R. England, Inc.*, 2000 UT App 239, ¶ 36, 8 P.3d 281 (explaining that the defendant's negligence is a proximate cause only if the negligence "played a substantial role in causing the [plaintiff's] injuries"). In other words, "[p]roximate cause refers to the basic requirement that before recovery is allowed in tort, there must be some direct relation between the injury asserted and the

---

5. (...continued)

      Although proximate cause is generally a matter for the jury, it becomes a question of a law when "the facts are undisputed and but one reasonable conclusion can be drawn therefrom." *Dee v. Johnson*, 2012 UT App 237, ¶ 3, 286 P.3d 22 (citation and internal quotation marks omitted); *see also, e.g.*, *Massey v. Utah Power & Light*, 609 P.2d 937, 937–39 (Utah 1980) (determining as a matter of law that the power company's negligence in installing the power lines too low was not the proximate cause of the plaintiff's electrocution injury because "a subsequent actor observe[d] that condition and negligently fail[ed] to avoid it" when he asked the plaintiff to help load an auger onto a truck with a telescopic boom that could strike the lines); *Bansaine v. Bodell*, 927 P.2d 675, 677 & n.2 (Utah Ct. App. 1996) (deciding as a matter of law that the defendant's reckless driving was not the proximate cause of the shooting death of a passenger because "reasonable persons could not disagree" that the driver could not have foreseen that a third person would shoot into the vehicle as a consequence of the driver's aggressive driving).

injurious conduct alleged," i.e., "it limits liability at some point before the want of a nail leads to the loss of the kingdom." *CSX Transp.*, 131 S. Ct at 2645–46 (Roberts, C.J., dissenting); *see also* W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 41, at 264 (5th ed. 1984) (explaining that proximate cause is "an unfortunate term" that does not focus so much on "cause" but instead merely attempts to articulate the "limitation [that] the courts have placed upon the actor's responsibility for the consequences of the actor's conduct").

¶11    As a natural corollary, an "actor's negligent conduct is not a [proximate cause] in bringing about harm to another if the harm would have been sustained even if the actor had not been negligent." *Holmstrom*, 2000 UT App 239, ¶ 46 (citing Restatement (Second) of Torts § 432(1) (1965)); *see also* W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 41, at 268 (5th ed. 1984) (explaining that except in cases where more than one person contributes to the plaintiff's injury, "no case has been found where the defendant's act could be called a [proximate cause] when the event would have occurred without it"). "Furthermore, foreseeability is an element of proximate cause" that requires an "inquiry" into "'the specifics of the alleged tortious conduct,' such as 'whether the specific mechanism of the harm could be foreseen.'" *Dee v. Johnson*, 2012 UT App 237, ¶ 5, 286 P.3d 22 (quoting *Normandeau v. Hanson Equip., Inc.*, 2009 UT 44, ¶¶ 18, 20, 215 P.3d 152) (additional citation and internal quotation marks omitted).

¶12    These principles were applied in *Dee*, a case where due to driver negligence, the defendant's vehicle slid off the road into a median on a snowy section of an interstate highway, setting into motion a sequence of events that resulted in the plaintiff's injury. *Id.* ¶ 2. After the defendant landed in the median, he contacted the Utah Highway Patrol, which sent a tow truck. *Id.* The tow truck pulled the defendant's car out of the median and back onto the highway, partially blocking the left lane. *Id.* The plaintiff, traveling along the same highway, lost control of his vehicle and slid into the

parked tow truck, resulting in the plaintiff's injury. *Id.* We affirmed the trial court's summary judgment determination that the defendant's negligence was not a proximate cause of the plaintiff's injuries. *Id.* ¶ 6. The defendant's negligent act—"driving his vehicle in a way that caused it to slide into the median"—did not itself cause the plaintiff any injury. *Id.* Nor was the vehicle, once it was in the median, any threat to the plaintiff; "indeed, had [the defendant]'s car remained in the median, presumably the collision would never have occurred." *Id.* And the "'specific mechanism of the harm'" that happened to the plaintiff—"the risk of injury to another driver from a negligent tow truck driver" if the defendant's negligent driving resulted in his needing to be towed—was not foreseeable at the time that the defendant acted negligently. *Id.* ¶¶ 5, 7 (quoting *Normandeau*, 2009 UT 44, ¶ 20). Accordingly, "the legal separation between [the defendant]'s driving on the slick highway and [the plaintiff]'s injury [wa]s too great to satisfy the requirements of proximate cause." *Id.* ¶ 7 (citing *Fordham v. Oldroyd*, 2007 UT 74, ¶ 30, 171 P.3d 411 (Wilkins, J., concurring and dissenting) (electing to employ a "traditional negligence analysis" rather than adopting the professional rescuer doctrine as the majority did and concluding that "[t]he legal separation between [the first driver]'s driving onto the slick road and the trooper's injury[, which resulted from a second driver's negligence,] is just too great to sustain a claim" that the first driver's negligence was the proximate cause of the trooper's injury)).

¶13     As in *Dee*, Costco's assignment of the task of setting out the cones to Holtkamp and Holtkamp's conduct in performing that task produced a sequence of events that led to Holtkamp requesting assistance from Proctor and ultimately to Proctor's injury. However, regardless of how the stack of cones came to be on the ground—through either the negligence of Holtkamp or Costco or otherwise—the spilling of the cones was only a type of "causation in fact," which is not the equivalent of "legal causation." The type of injury to be expected from any such negligence on Holtkamp's or Costco's part would be from the stack of cones hitting Proctor as they fell over or perhaps from Proctor

instinctively rushing over to steady the cones as they began to fall. But the falling cones did not injure Proctor nor did he try to steady them, and once the cones were on the ground, they posed no threat of injury to Proctor until Holtkamp asked him to help her by lifting them back onto the wheel base. "[I]ndeed, had [the cones] remained [on the pavement], presumably the [injury] would never have occurred." *See Dee*, 2012 UT App 237, ¶ 6. Thus, at the point when the cones ended up on the ground, "the legal separation" between Proctor's injury and the acts of Costco or Holtkamp that resulted in the cones falling to the ground, however negligent they might have been, "is too great" to render those acts the proximate cause of Proctor's injury. *See id.* ¶ 7; *see also CSX Transp.*, 131 S. Ct. at 2637 ("Injuries have countless causes, and not all should give rise to legal liability"(citing W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 42, at 273 (5th ed.1984)); instead, "'the law . . . declines to trace a series of events beyond a certain point.'" (quoting *Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99, 103 (N.Y. 1928) (Andrews, J., dissenting))); *Fordham*, 2007 UT 74, ¶ 30 (Wilkins, J., concurring and dissenting) ("Proximate cause is a legal limit to liability," which precludes recovery for a negligent act that may "be part of a chain of events eventually leading to an injury, but still [is] too remote to warrant holding the negligent party liable for the injury.").

¶14     Thus, no matter how the cones ended up on the ground, the act of their falling and the circumstances leading up to their falling, did not legally cause Proctor's shoulder injury. Rather, the potential proximate causes of Proctor's injury occurred only after the cones were on the ground and involved Proctor's allegations that Holtkamp requested that he help her by picking up the cones and then failed to provide any warning about their weight or any instruction on proper lifting technique. *See Holmstrom*, 2000 UT App 239, ¶ 46 ("'[An] actor's negligent conduct is not [a proximate cause] . . . in bringing about harm to another if the harm would have been sustained even if the actor had not been negligent.'" (quoting Restatement (Second) of Torts § 432(1) (1965))). These are the claims that survived Costco's motion for partial directed verdict

and were ultimately resolved by the jury in Costco's favor. Because Proctor could not have established that his first two allegations were a proximate cause of his injuries even if they had survived the motion, the court's error in directing a verdict was harmless. *See Dee*, 2012 UT App 237, ¶ 3 (explaining that proximate cause becomes a question of a law when "the facts are undisputed and but one reasonable conclusion can be drawn therefrom" (citation and internal quotation marks omitted)).

¶15 Furthermore, we are not persuaded by Proctor's argument that exclusion of evidence relating to the first two allegations was prejudicial because had the jury heard all of the evidence related to his negligence claim, it would have "see[n] the full picture of negligence[] and likely would have [come to] a different verdict." A plaintiff is not entitled to present evidence that does not pertain to an issue before the jury. *Cf. Hahnel v. Duchesne Land, LC*, 2013 UT App 150, ¶ 14, 305 P.3d 208 (declining to conclude that Buyers had been precluded from putting on a complete case on the basis that "the jury might have found Sellers in breach if Buyers' injury had been greater" because whether there was a breach of contract is a separate inquiry unrelated to the extent of damages).

¶16 But even if the circumstances leading up to Holtkamp's spilling of the cones were relevant as background in order to paint a full picture of how the events unfolded, Proctor was able to present the jury with much of the pertinent evidence despite the partial directed verdict. For example, Proctor inquired, without objection, about the nature of Holtkamp's elbow injury and about her ability to perform the task of putting out the traffic cones given her doctor's orders restricting her lifting to twenty pounds. He also questioned Holtkamp at length about Costco's knowledge of and attempts to accommodate her doctor-imposed lifting restriction, including moving her to the member service supervisor position that she held at the time of Proctor's injury. This questioning included a concession from Holtkamp that the job description of the member service supervisor position stated that the supervisor would occasionally have to lift up to fifty pounds, a weight beyond

her lifting restrictions. Proctor also asked Holtkamp, again without objection from Costco, about her conduct while pushing the wheel base from which the cones spilled. Proctor had earlier testified that Holtkamp had been "having a conversation" with him, "being friendly" and "possibly" flirting, while pushing the cones on the wheel base. In an attempt to portray Holtkamp as distracted while pushing the cones and not being careful, as she had earlier claimed to have been, Proctor's counsel asked Holtkamp whether she was "talking to [him] the entire time that [she was] wheeling the cones." Holtkamp responded that she "was talking to him as he approached and then just that part where we were trying to tip [the cones] back up" onto the wheel base. Although this answer could suggest that there was some separation between Holtkamp and Proctor's initial conversation and the spilling of the cones, both Proctor and Holtkamp had testified that the cones spilled shortly after Holtkamp pushed the wheel base over toward Proctor and that the conversation and the spilling were contemporaneous. Indeed, Holtkamp had earlier said,

> That morning I took the cones out, I pushed them through the [door] vestibule and I had them out on to the sidewalk. . . . I got out there and he started—Mr. Proctor walked—was coming in from the parking lot and he was like how are you? And I was like oh, and then I put out a few [cones] and I was just talking with him. He was very friendly.
>
> . . . .
>
> I'm pushing them . . . . And as I'm just pushing, and *I am talking*, . . . the wheel on the base stuck into the crack in the sidewalk and . . . it pushed the cones over.

(Emphasis added.) This testimony supports an inference that Holtkamp's response meant that she was talking with Proctor while she was pushing the wheel base carrying the cones. Thus,

despite the grant of partial directed verdict, Proctor was able to present the jury with a reasonably full picture of the circumstances that resulted in his injury.

¶17    In summary, the trial court's grant of partial directed verdict in Costco's favor on the first two allegations was error due to the parties' agreement about the presentation of evidence and Costco's partial withdrawal of its motion. That error, however, was harmless because neither allegation, even if proven, could constitute a legal cause of Proctor's injury. Additionally, no other harm resulted from the grant of partial directed verdict because Proctor was still able to put on evidence that provided the jury with a relatively complete picture of the events that led up to his injury to the extent that the totality of the circumstances was pertinent to his surviving claims. We therefore decline to reverse the grant of directed verdict to Costco on allegations one and two.

## II. Denial of Proctor's Motion for Directed Verdict

¶18    Proctor next contends that the trial court ought to have granted his own motion for directed verdict. We uphold the trial court's decision because when viewing the evidence in favor of Costco, as we must, we conclude that "reasonable minds could disagree with the ground [Proctor] asserted for directing a verdict." *See Florez v. Schindler Elevator Corp.*, 2010 UT App 254, ¶ 8, 240 P.3d 107 (citation and internal quotation marks omitted).

A.    Holtkamp's Request that Proctor Assist Her in Picking Up the Cones

¶19    Proctor argues that Costco admitted at trial that Holtkamp was negligent in asking Proctor to help her pick up the cones and that this admission required that the trial court direct a verdict against Costco on liability. The testimony which Proctor contends amounts to an admission of negligence, however, establishes only that Costco believed that asking a non-employee to assist an employee in carrying out her duties was contrary to its tenets of

good customer service. For example, the store manager testified that "Holtkamp should not have asked a non-employee to lift the cones" because "[i]t's just not giving good member service" to "ask members for help" and because "the customers can be injured." Proctor also elicited the following response from the assistant store manager about Holtkamp's knowledge of this policy:

> Q: Didn't you, in fact, tell [Holtkamp] that she should not have asked a non-employee to lift something for her?
>
> A: I'm sure I did.
>
> Q: Okay. And Ms. Holtkamp acknowledged to you, did she not, that she was not supposed to ask customers for help?
>
> A: Yes.

¶20    Costco's acknowledgment that Holtkamp acted contrary to Costco's member service rules, however, does not necessarily establish a breach of duty, a necessary element of a successful negligence claim. *See generally Webb v. University of Utah*, 2005 UT 80, ¶ 9, 125 P.3d 906 (identifying, as one of the four elements of negligence, the breach of the defendant's duty to conform to the standard of conduct of a reasonable person in similar circumstances). The duty of a business is simply to "exercise due care and prudence for the safety of business invitees," *Dwiggins v. Morgan Jewelers*, 811 P.2d 182, 183 (Utah 1991), and "that duty cannot be altered by higher standards prescribed by a merchant for his or her employees," *Steffenson v. Smith's Mgmt. Corp.*, 862 P.2d 1342, 1345 (Utah 1993). Whether Holtkamp's request that Proctor assist her in picking up the cones constituted a violation of that duty thus does not depend on Costco's internal rules established to ensure customer satisfaction and to avoid injury as a general matter, but instead on whether the request for customer assistance constituted a breach of the duty to "exercise due care and prudence

for the safety" of customers under the particular circumstances. *See Dwiggins*, 811 P.2d at 183. A finding that Holtkamp's request was a breach is not a foregone conclusion on the evidence presented at trial, particularly given that several witnesses, including Proctor himself, testified that it was not unreasonable or inappropriate, under the circumstances, for Holtkamp to ask Proctor to help pick up the cones and given that he was, of course, free to decline the request for assistance. Thus, whether Holtkamp's request that Proctor assist her amounted to a breach of duty was not conclusively resolved simply by testimony that her supervisors generally thought it was not a good idea to ask customers for help, but rather was a question of fact for the jury. *See B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶ 25, 275 P.3d 228 ("[B]reach . . . [is a] question[] for the fact finder determined on a case-specific basis."). A directed verdict would therefore have been inappropriate. *See Florez*, 2010 UT App 254, ¶ 8 (stating that the denial of a directed verdict is appropriate when viewing the evidence in favor of the non-moving party, "reasonable minds could disagree with the ground asserted for directing a verdict" (citation and internal quotation marks omitted)).

B.      Holtkamp's Failure To Warn or To Instruct

¶21      Nor has Proctor convinced us that he was entitled to a directed verdict of negligence on his allegations that Holtkamp failed to warn him of the weight of the cones or to instruct him on how to lift the cones. In a footnote to his brief, Proctor asserts that *Hale v. Beckstead*, 2005 UT 24, 116 P.3d 263, establishes the duty to warn and to instruct. Proctor does not provide any analysis, however, of how the duty in *Hale*, which involved the duty of care a landowner owes when there is an open and obvious danger on the property, *id.* ¶¶ 7–8, is applicable to this case. Although duty presents a legal question, *Jeffs*, 2012 UT 11, ¶ 25, this court will not undertake the burden of determining what the duty is without the benefit of research or meaningful analysis by the appellant, *see Allen v. Friel*, 2008 UT 56, ¶ 9, 194 P.3d 903.

¶22    More significantly, even assuming for purposes of appeal that Proctor has demonstrated a duty on Costco's part to warn and to instruct due to its superior knowledge, there are conflicting facts as to whether Holtkamp actually issued a warning about the weight of the cones and instructed Proctor on how to properly lift them prior to his attempt to pick up the cones. Proctor testified that, believing the cones to be lightweight, he yanked up on them, causing a tear in his shoulder, and that it was his abrupt acknowledgment of the injury that triggered Holtkamp to tell him that the cones were heavier than they appeared. According to Holtkamp, however, she not only warned Proctor prior to his lifting the cones to be careful because they were heavy but also instructed him on how to lift the cones. This issue was thus properly submitted to the jury. *See Mahmood v. Ross*, 1999 UT 104, ¶ 16, 990 P.2d 933 ("[W]e review the trial court's decision [to deny directed verdict] to determine if the evidence at trial raised a question of material fact which precluded judgment as a matter of law.").

¶23    Because there were issues of fact for the jury as to whether Costco breached its duty to "exercise due care and prudence for the safety" of customers, *see Dwiggins*, 811 P.2d at 183, or any duties it may have had to warn or instruct Proctor about lifting the cones, we affirm the trial court's denial of Proctor's motion for directed verdict.

### III. Sufficiency of the Evidence

¶24    Finally, Proctor contends that the evidence was insufficient to support the jury's verdict that Costco was not negligent. "In reviewing a jury verdict, we view the evidence in the light most supportive of the verdict, and assume that the jury believed those aspects of the evidence which sustain its findings and judgment." *Billings v. Union Bankers Ins. Co.*, 918 P.2d 461, 467 (Utah 1996) (citation and internal quotation marks omitted). Thus, Proctor, as the party challenging the verdict, must carry the heavy burden of establishing "that the evidence so clearly preponderates in [his]

favor . . . that reasonable people would not differ on" concluding that Costco was negligent. *See id.* (citation and internal quotation marks omitted); *see also Child v. Gonda*, 972 P.2d 425, 433 (Utah 1998) ("To support an insufficiency of the evidence claim on appeal, the one challenging the verdict must marshal the evidence in support of the verdict and then demonstrate that the evidence is insufficient when viewed in the light most favorable to the verdict." (citation and internal quotation marks omitted)).

¶25     In an attempt to carry his burden, Proctor asserts that Costco admitted that Holtkamp was aware that it was not good customer service for Holtkamp to ask a non-employee to assist her in picking up the cones and that Costco had superior knowledge about the weight of the cones and the proper technique for lifting them. This argument essentially repeats Proctor's argument for why directed verdict in his favor was appropriate. However, as we have discussed, *supra* ¶ 20, this evidence does not necessarily establish a breach of the duty Costco owed Proctor to "exercise due care and prudence for the safety of business invitees," *see Dwiggins v. Morgan Jewelers*, 811 P.2d 182, 183 (Utah 1991); *see also B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶ 25, 275 P.3d 228 (explaining that although duty is determined as a matter of law, whether there is a breach of that duty depends on the facts and is left to determination by the factfinder). And the jury's finding that Costco's conduct, through Holtkamp, was not a breach is supported by evidence in the record. Specifically, it was supported by Proctor's concession that it was not unreasonable for Holtkamp to seek his help; Costco's manager's and assistant manager's testimonies that although it was generally not good customer service to ask a non-employee to assist employees, it "wasn't inappropriate" in this situation where Holtkamp and Proctor were engaged in a one-on-one conversation outside the store minutes before it opened and no other employee was around to assist; and Holtkamp's testimony that Proctor "looked like he was strong," "like a weight lifter" who would know how to properly lift cones, a statement that Proctor corroborated with his own testimony that he could "dead lift[] 240 pounds" and that he was aware of proper

weightlifting techniques. Although Proctor went on to say that his ability to apply that knowledge depends on an awareness of the weight of the item to be lifted and that had Holtkamp warned him of the weight of the cones, he would have used a different strategy, Holtkamp countered that she did warn Proctor of the weight of the cones prior to his attempting to lift them and that she directed him on how to lift them safely.

¶26    It is the role of the jury to resolve conflicting factual testimony, and in reviewing the jury's verdict, we must assume that the jury believed Holtkamp. *See Nixdorf v. Hicken*, 612 P.2d 348, 354 n.16 (Utah 1980) (noting that when testimony "establishes a conflict in the evidence . . . it is the jury's duty to resolve"); *see also Billings*, 918 P.2d at 467 ("In reviewing a jury verdict, we . . . assume that the jury believed those aspects of the evidence which sustain its findings and judgment." (citation and internal quotation marks omitted)). Viewing this evidence in favor of the verdict, we conclude that there was sufficient evidence to support the verdict.

## CONCLUSION

¶27    We affirm. Although the trial court erroneously directed a verdict in favor of Costco on the first two allegations of negligence, that error was harmless. The court properly denied directed verdict to Proctor on the remaining allegations of negligence because reasonable minds could disagree about the result. Finally, there was sufficient evidence to support the jury verdict.

---